# In the United States Court of Federal Claims

No. 14-388L
(Filed: May 4, 2016)

```
*************************************
WILLIAM C. HARDY & BERTIE ANN      *
HARDY et al.,                      *
                                   *    Rails-to-Trails; Fifth Amendment Taking;
             Plaintiffs,           *    NITU; Easement; Fee Simple; Strip of Land;
                                   *    Right-of-Way; Railroad Purposes; Deed;
v.                                 *    Conveying Easements Under Georgia Law;
                                   *    Scope of Easement; Parcel of Land
THE UNITED STATES,                 *
                                   *
             Defendant.            *
*************************************
```

Elizabeth A. Gepford McCulley, Kansas City, MO, for plaintiffs.

Stephen Finn, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

      In this Rails-to-Trails class action, 112 plaintiffs contend that they own real property adjacent to a railroad corridor in Newton County, Georgia.  They assert that until 2013, defendant, the United States, held easements for railroad purposes that crossed their land.  According to plaintiffs, defendant then authorized the conversion of the railroad rights-of-way to recreational trails pursuant to the National Trail Systems Act ("Trails Act"), conduct that resulted in a taking that violated the Just Compensation Clause of the Fifth Amendment to the United States Constitution.  Plaintiffs move for partial summary judgment on the issue of liability.  Defendant cross-moves for partial summary judgment regarding the parcels of land identified in plaintiffs' motion, and also with respect to additional parcels that defendant identifies.  For the reasons set forth below, the court grants in part and denies in part the parties' motions.

## I.  BACKGROUND

### A.  Statutory and Regulatory Context

      During the last century, the United States began to experience a sharp reduction in rail trackage.  Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990) ("Preseault I").  To remedy this problem, Congress enacted a number of statutes, including the Trails Act, 16 U.S.C. §§ 1241-1251 (2012).  The Trails Act, as amended, provides for the preservation of "established

railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way as recreational and historical trails.  Id. § 1247(d).  This process is referred to as "railbanking," and is overseen by the Surface Transportation Board ("STB"), id., the federal agency with the exclusive jurisdiction to regulate "the construction, acquisition, operation, abandonment, or discontinuance" of most railroad lines in the United States, 49 U.S.C. § 10501(b) (2012).

Before railbanking can occur, the railroad company must seek to abandon its line, either by initiating abandonment proceedings with the STB pursuant to 49 U.S.C. § 10903, or requesting that the STB exempt it from such proceedings pursuant to 49 U.S.C. § 10502.  When considering the railroad company's abandonment application or exemption request, the STB will entertain protests and comments from interested third parties.  49 C.F.R. §§ 1152.25, 1152.29(a) (2010).  These third parties may submit requests for the interim use of the railroad line as a trail pursuant to 16 U.S.C. § 1247(d) and make offers of financial assistance pursuant to 49 U.S.C. § 10904.  Id.

If an interested third party submits a trail use request to the STB that satisfies the requirements of 16 U.S.C. § 1247(d), the STB must then make the necessary findings pursuant to 49 U.S.C. § 10502(a) or 49 U.S.C. §10903(d).  Once the railroad company agrees to negotiate a trail use agreement, the STB will issue one of two documents:  if the railroad company initiated abandonment proceedings, the STB will issue a Certificate of Interim Trail Use or Abandonment; if the railroad company sought an exemption, the STB will issue a Notice of Interim Trail Use or Abandonment ("NITU").  Id. § 1152.29(b)-(d).  The effect of both documents is the same:  to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions . . . ."  Id. § 1152.29(d)(1); accord id. § 1152.29(c)(1).  The STB will entertain requests to extend the 180-day deadline to enable further negotiations.  If the railroad company and the interested third party execute a trail use agreement, then abandonment of the railroad line is stayed for the duration of the agreement.  Id. § 1152.29(c)-(d); 16 U.S.C. § 1247(d).  If no trail use agreement is executed, the railroad company is permitted to fully abandon the line.  49 C.F.R. § 1152.29(c)-(d).  To exercise its abandonment authority, the railroad company must "file a notice of consummation with the STB to signify that it has . . . fully abandoned the line" within one year of "the service date of the decision permitting the abandonment . . . ."  Id. § 1152.29(e)(2).  In the absence of a timely filed notice of consummation, the railroad company's authority to abandon the line automatically expires.  Id.

If efforts to execute a trail use agreement are unsuccessful, and the railroad company notifies the STB that it has fully abandoned the line, the STB is divested of jurisdiction over the abandoned railroad line and "state law reversionary property interests, if any, take effect."  Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004).

## B.  The Initial Acquisition of the Land in Question

As explained above, plaintiffs are 112 individuals who collectively own 173 parcels of land adjacent to a railroad corridor in Newton County, Georgia.  The disputed land is situated

between milepost E 65.80 (at the point of the railroad line crossing Route 229 in Newborn, Georgia) and milepost E 80.70 (near the intersection of Washington Street, SW, and Turner Lake Road, SW, in Covington, Georgia), a distance of 14.9 miles. The alleged easements were acquired by the Middle Georgia & Atlantic Railway Company ("MG&AR"). In 1896, the Central of Georgia Railway Company ("CGA") bought MG&AR. CGA subsequently extended the railroad line to Porterdale, Georgia. In 1963, CGA was bought by Southern Railway Company, which merged CGA with two other railroad companies to form the modern-day CGA. CGA is currently a wholly owned subsidiary of the Norfolk Southern Railway Company ("NSRC").

When MG&AR acquired rights to the land upon which the railroad was built, it did so through a combination of standard form deeds and condemnation. CGA, as the successor-in-interest to MG&AR, assumed these rights over the rail corridor. Subsequently, when CGA extended the railroad line, it obtained property rights over the expanded corridor through standard form deeds that were different from those used by MG&AR. Most of the deeds vary with respect to specific details, including the size of the parcel and the consideration given. All of the deeds in question are dated between 1889 and 1927.

## C. Proceedings Before the STB

More recently, CGA decided that it no longer needed the railroad lines that traverse the parcels of land at issue in this case. Thus, on July 1, 2013, it submitted to the STB a notice of exemption from formal abandonment proceedings. The petition referenced the land described above. The Newton County Trail Path Foundation ("Foundation"), an interested third party, sought to prevent abandonment. It filed a petition with the STB on July 26, 2013, indicating that it was interested in negotiating a trail use agreement with the NSRC. The NSRC replied that it was willing to negotiate with the Foundation. On August 19, 2013, the STB issued a NITU, which provided 180 days, or until February 15, 2014, for negotiations. Since that date, the Foundation has requested extensions to continue and complete negotiations. The most recent request states that CGA and the Foundation "have been negotiating a trail use Agreement but need additional time to continue and complete negotiations." Parties' Joint Notice, Docket No. 75, Ex. 1. The STB approved this request and extended the NITU deadline to August 3, 2016.

## D. Procedural History

On May 6, 2014, William C. Hardy, for himself and as representative of a class of similarly situated individuals, filed a complaint in this court alleging a Fifth Amendment taking. Plaintiffs have amended their complaint twice. In the second amended complaint, Mr. Hardy and the other 111 plaintiffs continue to assert, as their sole claim for relief, a Fifth Amendment taking. Plaintiffs filed a motion for partial summary judgment on the issue of liability with respect to 101 of their parcels. Defendant cross-moved for partial summary judgment on those same 101 parcels, as well as an additional 50 parcels. The motions are fully briefed, and the court heard argument on October 28, 2015. Because of a factual dispute and legal argument that arose at oral argument that precluded a merits ruling, the court ordered supplemental briefing which is now complete.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Summary Judgment

Both plaintiffs and defendant move for summary judgment on the issue of liability pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

#### 2.  Fifth Amendment Takings and the Trails Act

As noted above, the sole claim for relief in plaintiffs' second amended complaint is a Fifth Amendment taking.  The Fifth Amendment prohibits the federal government from taking private property for public use without paying just compensation. U.S. Const. amend. V.  The United States Court of Federal Claims possesses jurisdiction to entertain Fifth Amendment takings claims against the United States, 28 U.S.C. § 1491(a)(1) (2012); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004), such as claims premised upon the conversion of a railroad right-of-way into a recreational trail pursuant to the Trails Act, Preseault I, 494 U.S. at 12-13.

To establish a taking, a plaintiff must first "identif[y] a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking."  Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013).  In determining whether a plaintiff has demonstrated the existence of a valid property interest in a Trails Act case, the court considers:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc) ("Preseault II"). Then, "if the court concludes that a cognizable property interest exists, it determines whether the government's action amounted to a compensable taking of that interest."  Casitas Mun. Water Dist., 708 F.3d at 1348.  In Trails Act cases, a taking occurs when "government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010).  It is well settled that the STB's issuance of "[t]he NITU is the government action that prevents the landowners from possession of their property unencumbered

4

by the easement." Id.; accord Barclay v. United States, 443 F.3d 1368, 1374 (Fed. Cir. 2006); Caldwell, 391 F.3d at 1233-34.

## B. The Parties' Arguments

Plaintiffs allege that they collectively own 173 parcels of land in the subject area, and move for partial summary judgment with respect to 101 of those parcels. Plaintiffs contend that they own the disputed property in fee simple, and that the railroad acquired easements limited to railroad purposes. Accordingly, plaintiffs assert that the issuance of the NITU authorizing the conversion of the railroad line for use as a public recreational trail under the Trails Act exceeded the scope of the easement and thus constituted a taking that requires just compensation.

Defendant cross-moves for partial summary judgment on those same 101 parcels of land, as well as on an additional 50 parcels. Defendant advances the following arguments in its cross-motion to explain why no taking has occurred: (1) for those parcels burdened by a strip of land acquired by CGA in fee simple, plaintiffs lack the requisite ownership interest needed to assert a taking; (2) for those plaintiffs whose land does not adjoin the rail corridor due to an intervening public road, plaintiffs have no claim; (3) for plaintiff whose parcel is burdened by a strip of land acquired by the railroad through adverse possession and held by the railroad in fee simple, plaintiff lacks the requisite ownership interest needed to assert a taking; (4) for plaintiffs whose parcels are burdened by railroad easements sufficiently broad to encompass future trail use, plaintiffs are precluded from establishing a taking; and (5) for plaintiffs whose parcels are burdened by railroad easements limited to railroad purposes, no taking has occurred because the railroad has not abandoned the rail line and extinguished its easements.

Plaintiffs dispute all of defendant's arguments. First, plaintiffs assert that the railroad's easements are limited to railroad purposes. Second, with respect to the parcels of land with intervening roads, which are themselves easements, plaintiffs contend that own to the centerline of the rail corridor. Third, with respect to the parcel of land for which there is no deed, plaintiffs concede that the railroad adversely possessed it, but assert that the railroad only possesses an easement, not ownership in fee simple. Finally, plaintiffs argue that the issuance of a NITU results in a taking. Thus, plaintiffs assert, whether or not the railroad abandoned the rail line is immaterial to the court's takings analysis.

## C. Analysis

### 1. Interpretation of Railroad Right-of-Way Deeds Under Georgia Law

The parties' first dispute concerns the nature of the property interests acquired by CGA and its predecessors. Plaintiffs assert that the deeds conveyed easements, while defendant contends that many of the deeds conveyed property in fee simple. Under Georgia law,

> [A corporation] shall be empowered, first, to cause such examinations and surveys to be made of the proposed railroad as shall be necessary to the selection of the most advantageous route, and for such purposes to be empowered by its officers, agents,

servants or employees, to enter upon the land or water of any person for that purpose. Second, to take and hold such voluntary grants of real estate and other property as may be made to it, to aid in the construction, maintenance and accommodation of its road, but the real estate received by voluntary grant shall be held and used for the purpose of such grant only.

Ga. Code Ann. § 1689 (1882).  Further, Georgia law provides that "[w]henever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken." Ga. Code Ann. § 5233 (1910).

To determine the nature of the property interests at issue, "the controlling question is whether the instruments upon which the plaintiff bases his claim of title convey the title to the lands therein referred to, or merely an easement for railroad purposes." Askew v. Spence, 79 S.E.2d 531, 531 (Ga. 1954).  When reviewing these deeds, the court must examine them in light of the common law and the law of Georgia at the time that they were executed.  Preseault II, 100 F.3d at 1534.  With respect to such deeds:

[T]he crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention many elements enter into the question.  The whole deed or instrument must be looked to, and not merely disjointed parts of it.  The recitals in the deed, the contract, the subject-matter, the object, purposes, and nature of the restrictions or limitations, if any, or the absence of such, and the attendant facts and circumstances of the parties at the time of the making of the conveyance are all to be considered. [OCGA § 44-5-34].

Latham Homes Sanitation, Inc. v. CSX Transp., Inc., 538 S.E.2d 107, 108 (Ga. 2000) (citing Jackson v. Rogers, 205 Ga. 581, 586-87 (1949)).

Although the deed must be examined as a whole to determine what type of property interest was conveyed, certain aspects of a deed carry significant weight.  According to the Supreme Court of Georgia, a deed that grants a railroad a strip of land as a "right-of-way" over the surrounding land typically conveys an easement, such that the railroad is given a right to pass over and use the land, instead of to the land, itself.  See Jackson v. Crutchfield, 191 S.E. 468, 470 (Ga. 1937) (holding that a deed that granted "right-of-way over which to pass" conveyed an easement).  In addition, the presence of a reservation in a deed, such as a conveyor's right to cultivate the land up to the right-of-way, offers proof of intent to convey an easement.  Jackson v. Sorrells, 92 S.E. 513, 514 (Ga. 1956) (holding that a deed that reserved the conveyor's right to "cultivate up to [the] road bed" constituted an easement); accord Safeco Title Ins. Co. v. Citizens & S. Nat'l Bank, 380 S.E.2d 477, 479 (Ga. 1989).

Moreover, the presence of a qualification, or a stipulation specifying that the property will be used "for railroad purposes," signals that the deed conveys an easement.  Askew, 79 S.E.2d at 532; see also Crutchfield, 191 S.E. at 470; Rogers v. Pitchford, 184 S.E. 623, 624 (Ga. 1936); Duggan v. Dennard, 156 S.E. 315, 317 (Ga. 1930).  A deed may further indicate that the

land is "to be used" "as [the railroad] may deem proper in the construction and equipment of [a] railroad . . . and for all other purposes." <u>Duggan</u>, 156 S.E. at 317. Because the deed stipulates that the property must be used for a particular purpose, it "clearly denotes that it was not the intention of the grantor that his lot of land should be alienated in fee." <u>Id.</u> In such cases, the words "'for all other purposes,' construed with its associate language," refer only to purposes related to building and using the railroad. <u>Id.</u>

In addition, the amount of consideration is a factor. For example, if the consideration set forth in a railroad right-of-way deed is relatively low, it is likely that the deed conveyed only an easement, and not fee simple title. <u>See id.</u>; <u>Pitchford</u>, 184 S.E. at 624. Deeds conveying property to a railroad for "nominal consideration" generally convey only easements. <u>Sorrells</u>, 92 S.E.2d at 514. By contrast, a large amount of consideration given is typically indicative of an intent to convey a property interest in fee simple. <u>Johnson v. Valdosta</u>, 150 S.E. 845, 847 (1929).

On the other hand, the presence of a "warranty clause" in a railroad right-of-way deed may weigh in favor of determining that the land was conveyed in fee simple. <u>Id.</u> at 847. For example, the grantor may "stipulate[] to warrant the title to the tract or parcel of land conveyed, and [to] defend the title against the claims of all persons whatsoever, unto the railroad company, its successors and assigns, forever in fee simple." <u>Id.</u> Further, the presence of the term "forever in fee simple," on its own, does not necessarily indicate that title was actually conveyed in fee simple. <u>See Sorrells</u>, 92 S.E.2d at 513; <u>Valdosta</u>, 150 S.E. at 847 (noting that "the words . . . 'forever in fee simple' do not demand the construction that this deed conveys title to this land, and not a mere easement therein"); <u>Atlanta B. & A. Ry. Co. v. Coffee Cty.</u>, 110 S.E. 214, 215 (Ga. 1921) (determining that the words "fee simple" did not describe the interest conveyed, but were only "descriptive of the extent of duration and enjoyment of the easement"). By itself, the phrase "forever in fee simple" has played little role in ascertaining whether an interest in fee simple or an easement was conveyed. However, when this phrase and a warranty clause are present "in connection with" other factors, including the payment of substantial consideration, then the combination of the phrase "fee simple forever" and the warranty clause are "potent . . . in inducing [the court] to hold" that the deed conveyed fee simple. <u>Valdosta</u>, 150 S.E. at 847.

Finally, in construing deeds purporting to convey property interests to a railroad company, courts must be cognizant that:

> "It is favorable to the general public interest that the fee in all roads should be vested either exclusively in the owner of the adjacent land on one side of the road, or in him as to one half of the road, and as to the other half, in the proprietor of the land on the opposite side of the road. This is much better than that the fee in long and narrow strips or gores of land scattered all over the country and occupied or intended to be occupied by roads, should belong to persons other than the adjacent owners. In the main, the fee of such property under such detached ownership would be and forever continue unproductive and valueless."

<u>Fambro v. Davis</u>, 348 S.E.2d 882, 884 (Ga. 1986) (quoting <u>Johnson v. Arnold</u>, 91 Ga. 659, 666-67 (1893)). Indeed, the Supreme Court of Georgia has specifically held:

> The rule avoids the undesirable result of having long, narrow strips of land owned by people other than the adjacent landowner.  Pindar asserts that this rule of construction also should govern the construction of deeds that designate a railroad right-of-way as a boundary.  This Court has, in fact, already applied it to language in a will to determine title to an abandoned railroad right-of-way.  We now adopt this rule for use in construing deeds that have as a boundary a railroad right-of-way.

Descendants of Bulloch, 475 S.E.2d 587, 589 (Ga. 1996).  Having set forth the relevant rules of deed construction, the court will now examine the deeds at issue in this case.

## 2.  The Deeds at Issue

### a.  The Armstrong Deed and Substantially Similar Deeds

The Supreme Court of Georgia has held that the "true meaning" of a deed "can only be ascertained by an examination and consideration of the instrument as a whole."  Duggan, 156 S.E. at 316.  The majority of the deeds at issue in this case contain language that is substantially similar to that of the deed signed by W.W. Armstrong in 1890 ("Armstrong deed").  This deed provides:

> This Indenture Witnesseth That the undersigned W.W. Armstrong has bargained sold and conveyed to the Middle Georgia & Atlantic Railway Company, a Corporation of Said State the following property – A strip of land situated in the 477 G.M. District Newton County.  Fifty feet wide, the same being twenty five feet on each side the center line of said Railroad for a right-of-way of said Railroad, or for any other use, in the discretion of said Company, and more particularly described as follows – Along a recent survey made by said Railway Co. through my land in said State & County. The consideration of this Deed is the sum of seven no/100 dollars paid by said Company to the undersigned before the execution of these presents. To Have and to Hold the said described land, with its members and appurtenances unto the said Middle Georgia & Atlantic Railway Company, its successors and assigns forever. And the said W.W. Armstrong will forever warrant and defend the title hereby conveyed to the said Railroad Company against any and every person whatsoever. In witness whereof, the said W.W. Armstrong has hereunto set his hand and affixed his seal, and delivered these presents, this the 1st day of May 1890.

Pls.', Ex. F(13).  The deeds that are similar to the Armstrong deed are listed in the table below.

| Deed | Consideration | Exhibit Number |
|---|---|---|
| Petty | "10 per acre dollars" | Pls.' Ex. F(3) |
| S.G. Morgan | $20 | Pls.' Ex. F(4) |
| A.R. Morgan | $56 | Pls.' Ex. F(5) |
| Rhebergh | $50 | Pls.' Ex. F(6) |
| Robinson & Hardeman | $25 | Pls.' Ex. F(7) |
| John Roquemore | $5 | Pls.' Ex. F(8) |
| J.H. Roquemore | $1 | Pls.' Ex. F(9) |
| Jackson | $5 | Pls.' Ex. F(10) |
| Epps | $28 | Pls.' Ex. F(11) |
| Banks | $8 | Pls.' Ex. F(12) |
| Armstrong | $7 | Pls.' Ex. F(13) |
| A.S. Hays | None | Pls.' Ex. F(15) |
| W.J. & B.F. Hays | $70 | Def.'s Ex. GG |
| Skinner | $5 | Pls.' Ex. F(17) |
| Pitts | Depot at Newton | Pls.' Ex. F(18) |
| J.C. Anderson | $5 | Pls.' Ex. F(19) |
| Smith | $5 | Pls.' Ex. F(21) |
| Stanton & Bateman | Left Blank in Deed | Pls.' Ex. F(22) |
| G.B. Stanton | $125 | Pls.' Ex. F(25) |
| Stanton, Hays, & Hays | $20 | Def.'s Ex. Y |
| Corley | $5 | Def.'s Ex. AA |
| Pace | $1 | Def.'s Ex. AA |
| Wright | $10 | Def.'s Ex. BB |

| Simms | $1 | Def.'s Ex. BB |
|---|---|---|
| Bagby | $5 | Def.'s Ex. V |
| White | $1 | Def.'s Ex. II |
| Childs | $1 | Def.'s Ex. JJ |
| Terrell | $10 | Def.'s Ex. JJ |
| Ozburn | $10 | Def.'s Ex. JJ |
| J.H. Roquemore | $1 | Def.'s Ex. JJ |

The Supreme Court of Georgia's decision in Sorrells provides guidance in interpreting the Armstrong deed and those substantially similar to it.  92 S.E. at 514.  In Sorrells, the court examined whether the interest conveyed to a railroad was an easement or title to the land.  Id. at 513-14.  In making its determination, the court considered the following factors:  the property in question was a "strip" of land in the middle of the grantor's land; the deed "recite[d] that the land [wa]s conveyed for use as a railroad"; the grantor retained the right to cultivate the land not in use by the railroad; and the consideration was "nominal."  Id. at 514.  Based on the totality of these factors, the court concluded that the deed merely conveyed an easement to operate a railroad "over the land in question."  Id.

The provisions in the Armstrong deed and those substantially similar to it are nearly identical to the language in the Sorrells deed.  Specifically, the Armstrong deed and those substantially similar to it each provided that a "strip of land" would be designated as a "right-of-way" for the railroad "or for any other use, in the discretion of said Company."  Pls.' Ex. F(13).  As described earlier, a deed that grants a railroad a strip of land as a "right-of-way" usually conveys an easement.  Crutchfield, 191 S.E. at 470.  In addition, the deeds here qualified how the designated land would be used, namely, for railroad purposes; if the parties had intended to convey fee simple in the strips of land, they would have had no reason to specify how the land would be used in their respective habendum clauses.  See Duggan, 156 S.E. at 317 (holding that because the deed in question "qualifi[ed]" how the land was to be used, it "seem[ed] clear that a reversion of the possession to the grantor or his heirs or successors in title was in the contemplation of the parties"); Latham, 538 S.E.2d at 109 (determining that  because the deed defined how the railroad would use the land and its rights therein, it was "inconsistent with the conveyance of title, where the owner has full dominion and control, [unlike] in an easement").  Clearly, when a deed indicates that the land is to be used for the railroad and "for all other purposes," it refers only to uses related to building and using the railroad.  Id. at 317.  Thus, the use of the phrase "for any other use" here refers only to uses related to railroad purposes.

The consideration described in the deeds in question was typically one or five dollars, with some exceptions, including one for $28, one for $50, and one for $56.[1]  Overall, these amounts are small.  Taken together, these factors lead the court to conclude that the grantors intended to convey easements, and not fee simple interests, in the strips of land.  See Askew, 79 S.E.2d at 532 (holding that a deed that conveyed a right-of-way for railroad purposes for nominal consideration conveyed an easement that reverted to the original owner when such use was complete); Sorrells, 92 S.E.2d at 514 (concluding that a deed that conveyed a strip of land for use as a railroad for nominal consideration conveyed an easement); Duggan, 156 S.E. at 317 (determining that a deed that conveyed a right-of-way and qualified that it was to be used in the construction and equipment of a railroad and for all other purposes, for nominal consideration, conveyed an easement).

### b.  The Lee Deed and Substantially Similar Deeds

Among the remaining deeds are two categories of deeds whose language differs from that of the Armstrong deed.[2]  First, some deeds contain language that is substantially similar to that of the deed signed by W.B. Lee in 1894 ("Lee deed").  This deed provides:

> This Indenture witnesseth that the undersigned W.B. Lee has bargained, sold and conveyed to the Middle Georgia & Atlantic Railway Company, a corporation of said State, the following property; A Strip of land situated in the 462 \G.M. District of Newton County, the width to be what is necessary for Railroad purposes for said Railroad, as a right-of-way, more particularly described as follows:
> This right-of-way is in the City of Covington, and in the South eastern portion of the City limits, passing through the eastern portion of the lot bought by said W.B. Lee from Jon L. Sibley – The consideration of this deed is the sum of one hundred and fifty dollars, paid by said Company to the undersigned before the execution of these presents.  To have and to hold the said described land, with its members and appurtenances unto the said Middle Georgia and Atlantic Railroad Company, its successors and assigns, forever.
> And the said W.B. Lee will forever warrant and defend the title hereby Conveyed to the said Railroad Company against any and every harm whatsoever.  In witness whereof, the said W.B. Lee has

---

[1]  Although the consideration described in the G.B. Stanton deed was larger, namely, $125, the host of other factors present in the deed—including the terminology used and the qualification that the land would be used for railroad purposes—weigh in favor of concluding that an easement was conveyed.

[2]  These categories or subsets have been created by the court after comparing the language of the various deeds at issue.

hereto set his hand and affixed his seal, and delivered those
presents the 2nd day of June 1894.  Signed, sealed and delivered.

Pls.' Ex. F(24).  The deeds that are similar to the Lee deed are listed in the table below.

| Deed | Consideration | Exhibit Number |
|------|---------------|----------------|
| Lee | $150 | Pls.' Ex. F(24) |
| McCormick | $325 | Pls.' Ex. F(2) |
| Hight | $150 | Pls.' Ex. F(14) |
| Henderson | $100 | Pls.' Ex. F(16) |
| Boyle | $300 | Pls.' Ex. F(26) |
| Cannon | $100 | Pls.' Ex. F(27) |
| Peek | $250 | Def.'s Ex. T |
| J.E. Robinson | $275 | Def.'s Ex. AA |
| Butler | $300 | Def.'s Ex. CC |

The Lee deed and those substantially similar to it each provided that a "strip of land"
would be designated as a "right-of-way" for the railroad.  Id.  The consideration that was paid in
each was substantial, ranging from $100 to $325.  As noted previously, a "substantial sum" of
consideration materially "differs from conveyances to railroad companies of right-of-way based
upon nominal considerations," as the former typically indicates that the land was conveyed in fee
simple.  Valdosta, 150 S.E. at 847.  Further, the deeds here contained a warranty clause, where
the grantor "would forever warrant and defend the title hereby conveyed . . . against any & every
person whatsoever."  Id.  Although the inclusion of a warranty clause would not be sufficient, on
its own, to establish that a fee simple interest was conveyed, the Supreme Court of Georgia has
held that "when considered in connection with . . . other terms of th[e] deed[s]" in question, such
as a substantial sum of consideration, the land was conveyed in fee simple.  Id.  Accordingly, the
court finds that the Lee deed and those substantially similar to it did not convey an easement, but
rather, a property interest in fee simple.  See id. at 847-48 (determining that the deed conveyed a
property interest in fee simple because of a combination of factors, including that a substantial
sum of money would be paid in consideration for a "strip of land" to be used as a "railroad right-
of-way," and that the deed contained a warranty clause).

### c.  The Robinson and Weaver Deeds

Finally, the deeds signed by J.E. Robinson in 1894 ("Robinson deed") and R.I. Weaver in 1927 ("Weaver deed") are distinct from those previously discussed.  As with the prior deeds, the court examines the language within these deeds to determine whether a fee simple interest was conveyed.  The relevant language and terms encompassed in the Robinson deed appear in identical, or nearly identical, form in the Weaver deed.  The court will examine the language in the Robinson deed.  This deed provided:

> THIS INDENTURE, Made the this ___ day of April in the year of one thousand eight hundred and ninety-nine between J.E. Robinson of the State of Georgia and the County of Newton of the first part, and the Central of Georgia Railway Company, a corporation created by and existing under the laws of the State of Georgia, of the second part:
>
> WITNESSETH: that the said party of the first part, for and in consideration of the sum of Two Hundred and seventy-five and no/100 ($275.00) dollars, to him in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell, and convey unto the said party of the second part, and to its successors and assigns forever, all that certain tract or parcel of land:
>
>> Beginning at the Southwest corner of the land of the said J.E. Robinson where it intersects the property of W.C. Lee on the South and B.F. Camp on the West; thence running in an Easterly direction on the line dividing said Robinson & W.C. Lee to a point where said land is intersected by a public road leading to Carroll's Brick Yard; thence along said public road to the right of way line of the Central of Ga. Ry. Co.; thence in a Westerly direction along the Southern line of said right of way and parallel therewith and distant 50 feet from the centre thereof to the intersection of said right of way by the property of B.F. Camp; thence in a Southerly direction along said property line to point of beginning. Containing in all 2.00 acres, more or less, situated in the State of Georgia County of Newton; the exact metes, bounds, & location begin shown on map attached & made a part here of.
>
> TO HAVE AND TO HOLD  the said above described property, together with all and singular the rights, members, and

> appurtenances thereto in anywise appertaining or belonging to the
> only proper use, benefit and behoof of the said party of the second
> part, its successors and assigns, in FEE SIMPLE forever.
>
> And the said party of the first part, will and his heirs, executors and
> administrators shall the afore granted premises unto said party of
> the second part its successors, ~~heirs, executors, administrators and~~
> assigns forever warrant and defend, by virtue of these presents.
> IN WITNESS WHEREOF, The said party of the FIRST part has
> hereunto set his hand and seal the day and year above written.

Def.'s Ex. AA at 11-12.

The Robinson deed contained no mention of a "strip of land" being granted, which, as described earlier, is terminology that typically indicates that an easement was conveyed.  Id.  Further, although the deed conveyed a property interest to a railroad company, the deed did not provide any qualification stipulating that the land would be used exclusively "for railroad purposes."  A qualification specifying that the land conveyed will be used for "railroad purposes" usually indicates that an easement was conveyed.  Askew, 79 S.E.2d at 532; see also Crutchfield, 191 S.E. at 470; Pitchford, 184 S.E. at 624; Duggan, 156 S.E. at 317.  Thus, the absence of a qualification leans more heavily in favor of a fee simple interest being conveyed.  In addition, the deed provided for a large amount of consideration, namely, $275.

Lending additional support in favor of finding that the conveyance was in fee is the deed's warranty clause, in which the grantor pledged that he and his "heirs, executors and administrators" would "forever warrant and defend" the property in question "unto" the railroad company to which the land was being conveyed.  Def.'s Ex. AA at 11.  The deed also provided that the land was being conveyed "in FEE SIMPLE forever."  Id.  Although the use of that terminology or the presence of a warranty clause in themselves "do not demand the construction" of a deed as conveying a property interest in fee simple, here, the appearance of both, the large sum of consideration, and the other factors set forth above compels the conclusion that this deed conveyed land in fee simple.  See Valdosta, 150 S.E. at 847 (holding that the presence of a warranty clause, the phrase "forever in fee simple," and a large sum of consideration in the deed was "potent" and indicated that the deed conveyed a property interest in fee simple); Latham, 538 S.E.2d at 109 (noting that "the deed form language of 'successor and assigns,' 'forever in fee simple,' and 'will warrant and defend the title thereof, against the claim of all persons' has the attributes of a deed of title in fee simple by warranty deed").  Moreover, as mentioned above, the Weaver deed contained the same or substantially similar relevant language as the Robinson deed.  In addition, the Weaver deed provided for a large amount of consideration, namely, $2500.  Consequently, the Weaver deed conveyed a property interest in fee simple as well.

### 3.  County Road 213

County Road 213 is a public road that separates the rail corridor and eight parcels of land: Claims 81.A, 81.B, 81.C, 83, 84, 85.A, 85.B, and 85.C.  According to defendant, County Road

213 was granted in fee to rural Newton County, and because the eight parcels do not adjoin the rail corridor, plaintiffs who own the parcels lack a property interest in the railroad right-of-way.

Defendant relies upon Department of Transportation v. Knight, 232 S.E.2d 72, 74 (Ga. 1977), in support of its contention that the land granted to build County Road 213 was conveyed in fee simple.  In Knight, the Supreme Court of Georgia evaluated whether a deed concerning land used to build a highway conveyed a fee simple interest or an easement.  To make this determination, the court engaged in an "examination of the laws governing the acquisition," id. at 226, and also interpreted the "words used" in the conveyance deed, including the term "conveyance," because such terms "serve as guides to [the] construction" of a deed and "the intention of the parties," id. at 227.  The court concluded that the deed conveyed an interest in fee simple.

Defendant's argument that the holding in Knight controls the outcome in this case lacks merit.  The subject land in Knight was conveyed to build a limited access highway next to a federal interstate highway pursuant to the Limited Access Highway Act, Ga. Code Ann. § 95-1703 (1965).  Under that statute, abutting landowners have limited or no access to a limited access highway, and both federal interstate highways and limited access roads constructed to support them are conveyed in fee.  By contrast, County Road 213 is a county road, not a limited access highway.  Indeed, defendant acknowledges that County Road 213 was created as a state road.  Thus, the statute that the court interpreted in Knight, and the court's specific reasoning therein, are inapt.

Although the court's conclusion in Knight does not compel the same result here because of the difference in the facts in the two cases, its methodology in interpreting a road conveyance deed is instructive.  Like the Knight court, this court will examine the relevant law and the construction of the conveyance deeds.

Public roads like County Road 213 were built pursuant to Georgia Statute 95-1721, which provides in pertinent part:

Section 1. That title 95 ("Roads, Bridges and Ferries"), part IV ("State Highway System"), chapter 95-17 ("State-Aid Roads") of section 95-1721 ("Counties Prohibited from Participating in the Cost of Construction") of the Code of Georgia of 1933 be and the same is hereby amended by striking and repealing all of said section 95-1721, and enacting in lieu thereof a new section to be numbered section 95-1721, and to read as follows:

95-1721.  Control and supervision of State-aid Roads; expense of procuring rights of way borne by county.  When a road is approved as a part of the system of State Highways, establishment of such road and its construction, including location, surveys, grading, and paving, shall be under the control and supervision of the State Highway Board.  All expenses necessary for such construction, including surveys, the location or relocation of such roads, and all other expenses connected with the establishment and construction thereof, except the expense of procuring rights of way, shall be paid by the Board but of funds allocated to the Highway Department.

> It shall be the duty of county commissioners or other county authorities having control of county roads to assist in procuring the necessary rights of way as cheaply as possible, and all expenses thereof, including the purchase price of any land purchased for a right of way, and all direct and consequential damages awarded in any proceeding brought to condemn any such right of way, shall be paid by the county in which such road is situated out of the county treasury; provided that nothing contained in this Act shall prevent the State Highway Board from using State Highway funds for the purpose of purchasing right of way, or to pay the purchase price thereof, or to pay any damages awarded on account of the location of any such State-aid Road, or from assisting the counties in so doing.

Ga. Code Ann. § 95-1721 (1935). This statute allowed the State Highway Board to construct "State-aid Road[s]" as part of the "system of State Highways," where the roads constituted "right[s] of way" running through private land. Id. As explained above, under Georgia law, the conveyance of land as a "right of way" is typically considered an easement, as opposed to a property interest in fee simple. Crutchfield, 191 S.E. at 470.

Further, the deeds that granted the land to build County Road 213 are substantially similar. One such deed provides:

> State Highway Department of Georgia RIGHT OF WAY DEED . . .
> WITNESSETH that U.T. Smith Jr., the undersigned, is the owner of a tract of land in said county through which a state aid road, known as project No. SP 1982, on State Highway No. 213 between Starrsville and Mansfield has been laid out by the State Highway Department of Georgia as a part of the State Aid Road System of Georgia, as provided by the Acts of General Assembly of Georgia of 1919 and 1921, said road being more particularly described in a map and drawing of said road in office of the State Highway Department of Georgia, Atlanta Co., to which reference is hereby made.
> Now, therefore, in consideration of the benefit to my property by the construction or maintenance of said road, and in consideration of ONE DOLLAR ($1.00) in hand paid the receipt whereof is hereby acknowledged. I do hereby grant, bargain, sell and convey to said State Highway Department of Georgia, and their successor in office in such land in Lot no. _____ of the _____ Land District or _____ G.M. District of said County as to make a right of way for said road as surveyed and measured from the center line of the highway location as follows: From Sta. 344/22 to Sta. 347/35 a strip 40 ft. wide Rt. & Lt. side. As shown in red on attached plat. Said right of way is more particularly described according to a plat of the right of way through the property of U.T. Smith, Jr. prepared by the State Highway Department of Georgia dated the 20 day of March 1958 and made a part of this description.

Pls.' Suppl. Ex. A-B at 25-26. This deed reflects that the land in question was granted to the State Highway Department of Georgia through "right of way deed[s]," where such deeds conveyed a "strip" of land as a "right of way" for a "state aid road" through private land. Id. In addition, each of these deeds conveyed the corresponding land for a consideration of one dollar.

Because the deeds referred to the land conveyed as a "strip" of land and a "right of way," the land was acquired to construct a "state aid road" as set forth in Georgia Statute 95-1721, and nominal consideration was given, the court concludes that the deeds that conveyed the land for County Road 213 conveyed easements. See Crutchfield, 191 S.E. at 470 (holding that a deed that granted "right of way over which to pass" conveyed an easement); Sorrells, 92 S.E.2d at 514 (determining that deeds conveying property to a railroad for "nominal consideration" generally convey only easements). Consequently, because the land granted to construct County Road 213 was conveyed as an easement, those plaintiffs who own the subject parcels of land adjacent to County Road 213 own to the centerline of the adjoining rail corridor. See Metro. Atlanta Rapid Transit Auth. v. Datry, 220 S.E.2d 905, 907 (Ga. 1975) (concluding that "as owners of land abutting Sycamore Street, [the plaintiffs] hold fee simple title to the middle line of the street subject to the easement held by the City of Decatur").

Finally, the court rejects defendant's argument that the deeds that conveyed the eight parcels of land—namely, parcels 81.A, 81.B, 81.C, 83, 84, 85.A, 85.B, and 85.C —were fee conveyances. Some of these parcels were conveyed by the Robinson & Hardeman deed, some were conveyed by the G.B. Stanton deed, some were conveyed by the White deed, and some were conveyed by a combination thereof. See Def.'s App'x A. Because the court previously determined that these deeds conveyed easements, see supra Part II.C.2.a, plaintiffs who own parcels of land conveyed by any one or combination of these three deeds possess a property interest in the railroad right-of-way.

### 4. Railroad Avenue

Further, in their initial briefs, the parties disagreed as to whether Railroad Avenue, which runs between the rail corridor and five parcels of land, was conveyed as an easement or in fee to the town of Mansfield, Georgia. In its supplemental brief, defendant concedes that Railroad Avenue was conveyed as an easement. Nonetheless, defendant asserts that although four of these parcels of land—namely, parcels 85.D, 92.A, 92.B, and 92.C—were conveyed as easements, parcel 95 was not because it falls beyond the limits of the Mansfield plat. In response, plaintiffs argue that parcel 95 is, indeed, within the limits of the Mansfield plat, and provide the survey for the land at issue. Based on a review of that survey, the court concludes that plaintiffs are correct. Parcel 95 was conveyed by the John Roquemore deed. Def.'s App'x A. The survey for the lands conveyed by the John Roquemore deed clearly indicates that such parcels, including parcel 95, were platted within the town of Mansfield. See Pls.' Suppl. Ex. A. Thus, parcel 95 falls within the limits of the Mansfield plat.

Defendant raises an additional challenge, arguing that the deed that conveyed these five parcels of land—namely, parcels 85.D, 92.A, 92.B, 92.C, and 95—was a fee conveyance. By contrast, plaintiffs argue that each of these parcels of land was conveyed as an easement. It is evident, based on the court's prior analysis, that defendant's argument is incorrect. The court has already determined that the deed that corresponds to parcel 95, namely, the John Roquemore deed, and the deed that conveyed the other four parcels, specifically, the J.H. Roquemore deed both conveyed easements. See supra Part II.C.2.a.

17

Finally, defendant argues that the Railroad Avenue easement and the rail corridor (if it is found to be an easement) should be subdivided at the center of the combined easements, rather than at the center of the railroad's easement.  Plaintiffs counter that because the railroad was conveyed as an easement before Railroad Avenue was, the landowners owned to the center of the rail corridor, and the subsequent establishment of the Railroad Avenue easement did not affect that ownership.  Plaintiffs are correct.  Defendant's contention would be accepted by the court if the Railroad Avenue easement and the railroad corridor easement had been established at exactly the same time.  However, the railroad corridor easement was established first, and the Railroad Avenue easement followed at a later date.  Thus, the landowners on both sides of the railroad corridor easement owned to the center of that easement; the addition of the Railroad Avenue easement afterwards did not change that.  Consequently, the plaintiffs who own the parcels of land adjoining Railroad Avenue own to the centerline of the railroad right-of-way and retain a property interest in it.[3]

## 5.  Parcel 97

Defendant also argues that there is no deed conveying parcel 97, and that the Stanton & Bateman deed does not pertain to that parcel of land.  Plaintiffs concede the point.  However, plaintiffs assert that because the railroad was built adjacent to parcel 97 and has been used and maintained by the railroad since the 1880s, the railroad has satisfied the requirements of adverse possession and has acquired an easement by prescription for railroad purposes.  In support of their position, plaintiffs rely on Watkins v. Hartwell R. Co., 597 S.E.2d 377 (Ga. 2004).  In that case, the court held that the subject railroad adversely possessed the disputed land and obtained a prescriptive easement.  Id. at 380.  The court explained that the railroad only acquired "title" to use the right-of-way, but that no fee ownership was given in the right-of-way.  Id.  Plaintiffs argue that similarly, in this case, the railroad adversely possessed parcel 97 and therefore only held title in the easement as a right-of-way, instead of acquiring title in fee simple.  According to plaintiffs, the title in the easement was extinguished when the rail line terminated service.  Defendant responds that the railroad did not acquire an easement that was limited to use as a right-of-way.  Rather, defendant argues, because the railroad adversely possessed the land, it obtained a claim of title and ownership in the land, not mere use by virtue of an easement.

Defendant has the better argument.  Generally, if a railroad adversely possessed disputed land, and there is uncertainty regarding whether it used all of the land in the right-of-way, a court may find that the railroad only acquired an easement limited to rail use.  However, because there is no uncertainty here, the railroad acquired title in fee simple.  The court's ruling is supported by the holding in Kelley v. Randolph, 763 S.E.2d 858 (2014).  In that case, the Supreme Court of Georgia held that "[t]o establish adverse possession, a party must show possession that is in the right of the party asserting possession and not another and that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right."  Id. at 860 (citing Ga. Code Ann. § 44-5-161 (2010)).  Here, the parties agree that the railroad satisfied these elements of adverse possession when it constructed and used a rail line adjacent to parcel 97.  Further, as set

---

[3]  Defendant previously argued that those plaintiffs who claimed ownership in parcels 3.B, 81.A, 81.C, and 106 did not, in fact, retain such property interests.  However, in its supplemental brief, defendant concedes that each of these plaintiffs did enjoy such ownership.

18

forth in <u>Kelley</u>, "[p]ossession of property in conformance with these elements for a period of 20 years confers good title by prescription to the property." <u>Id.</u> (citing Ga. Code Ann. § 44-5-163 (2010)).  The railroad possessed the property for more than twenty years, and thus, acquired title to it, as opposed to a mere easement to use it.  The railroad's "[c]onstruction" of the railroad "demonstrated [its] exercise of exclusive dominion over the property[,] . . . establish[ing] a claim of right to the property." <u>Id.</u>  Thus, the railroad acquired a claim of title, or ownership of the land, with respect to parcel 97.  <u>See Id.</u> (noting that "'claim of right' is synonymous with 'claim of title' and 'claim of ownership' in the sense that the possessor claims the property as his own"(citing <u>Walker v. Sapelo Island Heritage Auth.</u>, 674 S.E.2d 925 (Ga. 2009))); <u>accord Ga. Power Co. v. Irvin</u>, 482 S.E.2d 362 (Ga. 1997); <u>Waxelbaum v. Gunn</u>, 104 S.E. 216 (Ga. 1920).

Plaintiffs rely on <u>Watkins</u> to argue that the prescriptive easement here grants "title" to use the right-of-way, but not fee ownership.  The reasoning in <u>Watkins</u> fails to assist plaintiffs.  In that case, the deed conveying the land in question was unrecorded, and the court held that the railroad satisfied the requirements for adverse possession, thereby "gain[ing] a right-of-way by prescription." 597 S.E.2d at 380.  The court then examined the "scope of that prescription." <u>Id.</u>  It held that because it was not clear whether the railroad had used the entirety of the land in the right-of-way, there was a genuine dispute of material fact as to whether the railroad had "actual possession of the disputed property." <u>Id.</u>  Consequently, the court reasoned, because constructive possession of the disputed land in such cases does "not extend beyond the tract or lot in which actual possession is maintained," <u>id.</u>, and the railroad had not demonstrated actual possession, it could "not prevail based on constructive possession," <u>id.</u> at 380.  By contrast, in this case, there is no such factual dispute.  The parties agree that the railroad adversely possessed parcel 97, and plaintiffs do not offer any arguments or evidence creating a dispute of fact regarding whether the railroad used all of the land in the right-of-way.  Thus, there is no basis to question whether the railroad actually possessed the land, and consequently, whether it constructively possessed it.  The railroad's claim to the land would therefore not be limited to an easement.  Accordingly, the railroad acquired a claim of title in fee with respect to parcel 97.

### 6.  The Scope of the Easements

The court must now determine whether the easements at issue were limited to use for railroad purposes, or if they were broad enough to encompass use for recreational trails.  <u>See Preseault II</u>, 100 F.3d at 1533 (examining whether the easements were "limited to use for railroad purposes, or [if] they include[d] future use as public recreational trails").  Plaintiffs contend that because the deeds at issue indicated that the respective rights-of-way were to be used for railroad purposes, the scope of the easements was limited to rail use.

By contrast, defendant argues that the easements contemplated public uses like railbanking.  In support of its contention, defendant relies on <u>Romanoff Equities, Inc. v. United States</u>, 815 F.3d 809, 810 (Fed. Cir. 2016), in which the United States Court of Appeals for the Federal Circuit ("Federal Circuit") held that the conversion of a railway to a recreational trail in the state of New York did not exceed the scope of the easement, and thus, did not constitute a Fifth Amendment taking.  In that case, the court explained that the interest conveyed to the railroad was an easement.  <u>Id.</u>  In determining the scope of that easement, the court relied on <u>Missionary Society of the Salesian Congregation v. Evrotas</u>, 175 N.E. 523 (N.Y. 1931), a

decision by the Court of Appeals of New York, for guidance.  In <u>Missionary Society</u>, the court held that because the subject deed allowed the easement to be used by the railroad and "for all other lawful purposes," the easement could also lawfully be used as a walkway and to install water pipes.  <u>Id.</u> at 524.  The court reached this conclusion because, it explained, "[w]hen the terms of a grant are doubtful, the grantee may take the language most strongly in its favor."  <u>Id.</u>

Consequently, the Federal Circuit reasoned in <u>Romanoff Equities</u> that the <u>Missionary Society</u> decision "clearly signal[ed] that the New York courts will enforce easements by their terms and that a very broad easement, although 'unusual,' is not void simply because it extends not only to the specific purposes named in the easement, but to 'all other lawful purposes.'" 815 F.3d at 814 (citation omitted).  The court then noted that the language of the subject deed was "broad" because it granted the railroad and "its successors and assigns forever . . . the permanent and perpetual rights and easements . . . together with the exclusive use of the portion of the parcels of land herein described . . . for railroad purposes and for such other purposes as the Railroad Company, its successors and assigns, may from time to time or at any time or times desire to make use of the same." <u>Id.</u> at 811 (citation omitted).  The Federal Circuit therefore affirmed the trial court, explaining that the "broad grant of the easement 'for such other purposes' as the railroad company and its successors desired to make of it, was broad enough to encompass the use of the property for a park." <u>Id.</u>  In this case, defendant argues that because the language of the subject deeds is similarly broad, the court should find that they encompassed trail use.

The court examines the scope of the easements that have already been identified above. In addition, the court evaluates the nature of some additional easements, namely, the easements conveyed by the Stanton & Bateman deed and by the Stanton, Hays, & Hays deed.[4]  Because the Supreme Court of Georgia has held that when deeds stipulate that the land in question is to be used for railroad purposes and for all other purposes in the railroad's discretion, the scope of the easements conveyed is limited to rail use, the court finds that the easements in this case contemplated only rail use.  As described previously, if a deed stipulates that the property in question is to be used for railroad purposes, the intended use is limited to such purposes.  <u>See</u> <u>Crutchfield</u>, 191 S.E. at 470-71 (determining that because the deed in question "granted, sold, bargained, and conveyed to [a railroad company], its successors and assigns, the right of way over which to pass at all times by themselves, directors, officers, agents and hirelings, for the purpose of running, erecting, and establishing thereon a railroad track or tracks," the property was "deeded solely for a railroad right of way, and therefore conveyed to the company only an easement in said lands for that purpose" (internal quotation marks omitted)); <u>accord</u> <u>Askew</u>, 79

---

[4]  Defendant concedes that certain deeds conveyed easements.  Specifically, these deeds are:  the Dearing deed, Pls.' Ex. F(1); the Stanton, Hays, & Hays deed, Def.'s Ex. Y; the Stanton & Bateman deed, Def.'s Ex. R; and the Brown deed, Def.'s Ex. U.  Defendant also admits that when parcels of land along the subject rail corridor were acquired by condemnation, namely, the "Samuel Johnson Condemnation," the railroad acquired easements.  Defendant concedes that the scope of the easements associated with the Dearing and Brown deeds, and with the Samuel Johnson Condemnation, was limited to railroad purposes.  However, with respect to the Stanton & Bateman deed, as well as the Stanton, Hays, & Hays deed, defendant argues that the respective easements were broad enough to encompass railbanking and interim trail use.

S.E.2d at 532; Rogers, 184 S.E. at 624; Duggan, 156 S.E. at 317.  Thus, if an easement is conveyed for railroad purposes, a public use beyond that is not considered a railroad purpose. See Tompkins v. Atl. Coast Line R. Co., 79 S.E.2d 41, 47 (Ga. App. 1953) (holding that if an easement for railroad purposes is conveyed, it does not allow for communications or power lines on the right-of-way because they exceed the scope of a railroad purpose); see also Haggart v. United States, 108 Fed. Cl. 70, 93 (Fed. Cl. 2012) (finding that "recreational trail use is not a railroad purpose and thus exceeds the scope of the . . . easements").  Moreover, if the deed conveys the land for the railroad's use and indicates that the land is to be utilized "for all other purposes," this phrase, "construed with its associate language," refers only to purposes related to building and using the railroad.  Duggan, 156 S.E. at 317; Tompkins, 79 S.E.2d at 45 (noting that "the conveyance to a railroad of the right to construct and operate its road is ordinarily construed to give the railroad the right to use and to take from the described area of the easement earth, stone, and timber necessary for the construction of the roadbed and the free operation of its trains thereon").

In this case, the Stanton, Hays, & Hays deed conveyed an easement "through which the track of the . . . Rail Road r[an]," a qualification clearly indicating that the right-of-way was intended for rail use alone.  Def.'s Ex. Y at 7.  Further, the Armstrong deed, the deeds substantially similar to it, and the Stanton & Bateman deed all conveyed easements to the railroad "for a right of way of said Railroad, or for any other use, in the discretion of said Company."  Pls.' Exs. F(13), F(22); Def.'s Ex. 4.  Because the initial part of the clause indicated that the land conveyed would be used "for a right-of-way of" the railroad, the use of the property was limited to railroad purposes.  Id.  Further, although the remainder of the clause indicated that the land would be used "for any other use, in the discretion of the Company," this language is interpreted in the context of the earlier clause, and thus refers only to purposes related to construction and use of the railroad.  Id.  Consequently, the scope of the easements conveyed herein was limited to railroad purposes, and did not contemplate the use of the land as public trails or for any other use.

Defendant's argument that the reasoning in Romanoff Equities applies here is misplaced.  Although the Federal Circuit's decisions are binding on this court, the Federal Circuit has also held that in Trails Act cases, whether a taking has occurred is governed by "state-defined property rights."  Ladd, 630 F.3d at 1019.  Thus, because the Federal Circuit's analysis in Romanoff Equities was based on New York property law, that decision is not binding here, where the court must apply Georgia law.  The difference between these two states' bodies of law highlights why the holding in Romanoff Equities does not apply here.  Although New York courts have interpreted the phrase "for all other lawful purposes" as being broad enough to include uses beyond railroad purposes, the Supreme Court of Georgia has held that if a deed conveys land for a railroad's use and indicates that the land is to be utilized "for all other purposes," that phrase, in tandem with the "associate language," refers only to purposes related to building and using the railroad.  Duggan, 156 S.E. at 317.  Consequently, while the phrase "for all other purposes" is interpreted to include public trail use in New York law, it holds the opposite meaning in Georgia law.  The decision in Romanoff Equities is therefore inapposite here.  Accordingly, the scope of the easements at issue here is limited to railroad purposes and did not encompass public trail use.

### 7.  The Effect of the NITU on Plaintiffs' Property Interests

In its cross-motion, defendant argued that with respect to those deeds that conveyed easements, because no railbanking and interim trail use agreement has been reached, it was uncertain whether a taking had occurred.  However, in its supplemental briefing, defendant has reversed course and now concedes that any takings that occurred did so on the date that the NITU was issued.  Nonetheless, defendant argues, because the railroad has not abandoned the rail line, the easements have not been terminated.  According to defendant, mere nonuse of the rail line, without further indication of an intent to abandon it, does not constitute abandonment.  Further, defendant asserts, the railroad's decision to negotiate with a third party regarding the future use of the corridor indicates that the railroad has not abandoned its property interest.  Defendant argues that if an agreement is reached, the railroad has a right to restore rail service in the future.  According to defendant, because the railroad has not abandoned the rail line, the easements conveyed by deed have not been terminated and no taking has occurred.

Defendant's arguments are contrary to established binding precedent.  In Ladd, the central issue before the Federal Circuit was "whether the issuance of a NITU constitutes a compensable taking, where no conversion to a recreational trail has occurred."  630 F.3d at 1015.  The Federal Circuit held:

> Because according to our precedent, a takings claim accrues on the date that a NITU issues, events arising after that date—including entering into a trail use agreement and converting the railway to a recreational trail—cannot be necessary elements of the claim.  Hence it is irrelevant that no trail use agreement has been reached and that no recreational trail has been established.

Id. at 1024; see also Barclay, 443 F.3d at 1378 ("This is merely another version of the argument–rejected in Caldwell—that the original NITU should not be viewed as the taking because subsequent events might render the NITU only temporary.").  The Federal Circuit's holdings are unambiguous:  the STB's issuance of a NITU effects a taking.  Events arising thereafter—such as the conversion of a rail line to a trail pursuant to a railbanking agreement, or the restoration of rail service—are not necessary elements in determining whether a taking occurred.  Indeed, they have no bearing whatsoever on the existence of a Fifth Amendment taking.  This conclusion was reinforced in Preseault II, when the Federal Circuit held that abandonment of the rail line provided an "alternative ground for concluding that a governmental taking [had] occurred."  100 F.3d at 1549.  Abandonment is therefore not an essential element to determining whether a NITU effects a taking.  Rather, abandonment is an alternative means of evaluating whether a taking has occurred, distinct from the certainty that issuance of a NITU effects a taking.  Consequently, a taking occurs if (1) a NITU is issued, or, alternatively, (2) the rail line is abandoned.  Because a NITU was issued here, a Fifth Amendment taking occurred, regardless of whether the rail line was abandoned.  Accordingly, the affected plaintiffs are entitled to summary judgment on the issue of liability.[5]

---

[5]  Defendant argues that the NITU and Exemption Notice are ambiguous as to the location of the end of the rail line.  However, as the court stated during oral argument, and in its

### III.  CONCLUSION

Because the parties have demonstrated that:  (1) some of the deeds at issue conveyed easements limited to railroad purposes; (2) some of the deeds at issue conveyed interests in fee simple; and (3) condemnation of some parcels of land resulted in the acquisition of easements limited to railroad purposes, the court **GRANTS IN PART** and **DENIES IN PART** the parties' cross-motions for partial summary judgment.  The parties shall file a joint status report **by no later than Monday, May 23, 2016** suggesting further proceedings.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

---

November 9, 2015 order, the parameters of the NITU are settled by the plain language of the NITU, itself.  Tr. of Oral Arg. 72.