# In the United States Court of Federal Claims

No. 14-388L
(Filed: November 28, 2016)

```
*************************************
WILLIAM C. HARDY & BERTIE ANN      *
HARDY et al.,                      *
                                   *
               Plaintiffs,         *        RCFC 59(a)(1); Motion for
                                   *        Reconsideration; Deed; Interpretation of
v.                                 *        Deeds Under Georgia Law; Easement;
                                   *        Scope of Easement; Fee Simple; Adverse
THE UNITED STATES,                 *        Possession; Claim of Right; Color of Title
                                   *
               Defendant.          *
*************************************
```

Elizabeth A. Gepford McCulley, Kansas City, MO, for plaintiffs.

Stephen Finn, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiffs move, pursuant to Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for reconsideration of the court's May 4, 2016 ruling on the parties' cross-motions for summary judgment ("summary judgment ruling"). For the reasons set forth below, the court denies in part and grants in part plaintiffs' motion for reconsideration.

## I. BACKGROUND

In this Rails-to-Trails action, 112 plaintiffs contend that they own real property adjacent to a rail corridor in Newton County, Georgia. They assert that until 2013, the Central of Georgia Railroad Company ("CGA") and its predecessors held easements for railroad purposes that crossed their land.[1] According to plaintiffs, defendant United States then authorized the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trail Systems Act, conduct that resulted in a taking in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution.

---

[1] The modern-day CGA is the successor in interest to the Middle Georgia and Atlantic Railway Company ("MG&AR"), which originally acquired the land at issue in this action.

Descriptions of the conflict's statutory and regulatory context, initial acquisition of the land in question, proceedings before the Surface Transportation Board, and procedural history are provided in the court's summary judgment ruling and need not be repeated herein. See Hardy v. United States, 127 Fed. Cl. 1, 5-7 (2016). In that ruling, the court determined the following:

- The Armstrong deed and twenty-nine similar deeds conveyed an easement for railroad purposes only.

- The Lee deed and eight similar deeds, including the Hight, Henderson, and Cannon deeds, conveyed a fee simple interest.

- The Robinson and Weaver deeds conveyed a fee simple interest.

- The land granted to construct County Road 213, which separates the rail corridor and eight parcels of land, was conveyed as an easement. The County Road 213 easement was conveyed after the rail corridor easement was conveyed. Thus, plaintiffs who own the subject parcels of land adjacent to County Road 213 own to the center line of the adjoining rail corridor.

- The land granted to construct Railroad Avenue, which runs between the rail corridor and five parcels of land, was conveyed as an easement, as the parties conceded in supplemental briefing, and one of the five parcels of land, Parcel 95, was included in the Mansfield town plat. The Railroad Avenue easement was conveyed after the rail corridor easement was conveyed. Thus, plaintiffs who own the parcels of land adjacent to Railroad Avenue own to the center line of the adjoining rail corridor.

- In accordance with binding precedent, a taking occurred when the Notice of Interim Trail Use ("NITU") was issued regardless of whether the rail line was abandoned.

Id. at 10-22.

After the court issued its summary judgment ruling, plaintiffs moved for reconsideration. Specifically, plaintiffs argue that (1) the court did not properly apply the standards for interpretation of deeds under Georgia law with respect to four particular deeds and (2) the court erred in applying the law of adverse possession to the portion of the rail corridor adjacent to the parcel owned by claimant 97 ("Parcel 97"). Defendant counters that plaintiffs are merely attempting to relitigate the issues, which is an insufficient ground for reconsideration. The motion is fully briefed, and the court deems oral argument unnecessary.

## II.  DISCUSSION

### A.  Standard of Review

A motion for reconsideration is a request for extraordinary relief and is not an avenue for a dissatisfied party to simply relitigate the case.  Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision).  Thus, such a motion does not allow a party to raise arguments that it failed to raise previously or reassert arguments that have already been considered.  Four Rivers Invs. Inc., 78 Fed. Cl. at 664.  Pursuant to RCFC 59(a)(1), the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice."  Young v. United States, 94 Fed. Cl. 671, 674 (2010) quoted in Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016).  A decision on a motion for reconsideration is within the discretion of the trial court.  See Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

### B.  The Court Properly Interpreted the Hight, Henderson, and Cannon Deeds, but Erred in Interpreting the Lee Deed

In its summary judgment ruling, the court was required to determine the nature of the property interests acquired by CGA and its predecessors.  See Hardy, 127 Fed. Cl. at 8; see also Askew v. Spence, 79 S.E.2d 531, 531 (Ga. 1954) (explaining that the "controlling question" is whether the deeds conveyed title in fee simple or an easement for railroad purposes).  Plaintiffs argued that all of the deeds granted the railroad an easement limited to railroad purposes, while defendant argued that the grants were either fee simple interests or easements broad enough to include rail banking and interim trail use.  The court determined that the Armstrong deed, among others, conveyed an easement limited to railroad purposes and that the Lee, Hight, Henderson, and Cannon deeds, among others, conveyed a fee simple property interest.  Plaintiffs urge the court to reconsider, stating that the misapplication of relevant law to the Lee, Hight, Henderson, and Cannon deeds was a clear error because these deeds are substantially more similar to the Armstrong deed than to the other deeds that the court determined had conveyed a fee simple property interest, particularly with respect to the consideration given.  If plaintiffs' arguments are correct, the court must perform a new analysis that would change the court's prior ruling and warrant the granting of the motion for reconsideration under RCFC 59(a)(1).  See Biery, 818 F.3d at 711.

A deed must be examined as a whole in light of the common law and Georgia statutes that existed at the time of its execution to determine what type of property interest was conveyed, but certain clauses of a deed can carry significant weight.  See Ga. Code Ann. § 44-5-34 ("[T]he intention of the parties should, if possible, be ascertained from the whole instrument and carried into effect."); Presault v. United States, 100 F.3d 1525, 1534 (Fed. Cir. 1996) (noting that an instrument is examined "in light of the common law and [state] statutes . . . then in effect" with particular attention given to specific clauses); Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.,

784 S.E.2d 353, 358 (Ga. 2016) (explaining that a "deed must be examined in its entirety in order to determine the parties' intent and to be given a construction which is consistent with reason and common sense" in light of the "circumstances and purpose" under which it was executed).  In its summary judgment ruling, the court described the standards by which deeds are interpreted under Georgia law to determine the intention of the parties in light of "the attendant facts and circumstances of the parties" at the time a deed was executed:

- A deed granting a railroad a strip of land as a "right-of-way," or the presence of a reservation in a deed (such as a grantor's right to cultivate land up to the right-of-way), typically indicates an easement.

- The presence of a qualification or stipulation that the property will be used for railroad purposes generally conveys an easement, even if the grant includes language such as "all other purposes."  In such cases, "all other purposes" refers only to purposes related to building and using the railroad.

- Deeds reciting nominal consideration typically convey easements, whereas substantial consideration typically indicates an intent to convey a fee simple interest.

- The presence of a warranty clause may weigh in favor of determining that the land was conveyed in fee simple.  While the phrase "forever in fee simple" on its own can refer simply to the duration of an easement, a deed's recitation of such a phrase and a warranty clause alongside other elements, including substantial consideration, can provide "potent" evidence of an intent to convey a fee simple interest.

- Courts must be cognizant of the strong Georgia public policy preference against strips and gores of land held in fee simple.

Hardy, 127 Fed. Cl. at 8-10.  Neither party disputes these standards.

The court determined that the Armstrong deed and twenty-nine other deeds conveyed an easement limited to railroad purposes because those deeds each provided a strip of land to be designated as a right-of-way for railroad purposes and the consideration in each case was typically small.  Although the consideration recited in the G.B. Stanton deed ($125) was much larger than the consideration recited in the other deeds in this group, the totality of all of the other clauses in that deed—including the particular terminology used—weighed in favor of concluding that the deed conveyed an easement.  For example, the G.B. Stanton deed "reserve[d] the right and privilege of making and using such crossings as may be necessary for farm uses."  As the court previously explained, the presence of such a reservation in a deed typically indicates an easement.

-4-

In asserting that the court clearly erred in interpreting the Lee, Hight, Henderson, and Cannon deeds (the "disputed deeds") under the applicable standards, plaintiffs focus primarily on the amount of consideration recited in those deeds.[2]  The focus on consideration is proper, given that the deeds were substantially similar in many other respects both to the deeds determined to have conveyed an easement and the deeds determined to have conveyed a fee simple interest.[3]  Plaintiffs contend that the consideration recited in the disputed deeds ($100 to $150) is not substantial and therefore these deeds should be held to have conveyed an easement in light of the other factors.  To bolster this assertion, plaintiffs argue that two deeds held to convey an easement recited consideration of $70 and $125 (the W.J. and B.F. Hayes deed and the G.B. Stanton deed, respectively), whereas the lowest consideration in deeds found to have conveyed a fee simple interest besides the disputed deeds was $250 (in the Peek deed).

Each of the disputed deeds was executed in either April 1890 or June 1894.  Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, the court takes judicial notice that according to the National Bureau of Economic Research, the national median wage in 1890 was $445 annually.[4]  Clarence D. Long, Wages and Earnings in the United States 1860-1890 42 (1960).  Therefore, the court did not err in deeming consideration of $100 in 1890 and 1894 to be substantial.

Furthermore, consideration should not be examined in a vacuum.  As explained above and in the court's summary judgment ruling, consideration is but one of the standards by which to interpret deeds because the entire context of a deed's execution is important.  Atlanta Dev. Auth., 784 S.E.2d at 358.  In this case, comparing the consideration recited in the disputed deeds to the $125 consideration recited in the G.B. Stanton deed is inapposite because, as explained above, the G.B. Stanton deed contained clauses other than the clause reciting the amount of consideration showing that it conveyed an easement for railroad purposes.  Those distinguishing clauses of the G.B. Stanton deed, such as the reservation for farm use, were not contained in any of the disputed deeds.

---

[2]  Plaintiffs also point to the granting clause and warranty clause in each of the disputed deeds and the Lee deed's reference to railroad purposes.  However, the court properly considered the similarities in the granting and warranty clauses among all the deeds and need not revisit those similarities.  The reference to railroad purposes in the Lee deed is discussed below.

[3]  The Henderson and Hight deeds, for instance, used the same standard form deed used by the Armstrong, G.B. Stanton, W.J. and B.F. Hayes, and McCormick Neal deeds.  The McCormick Neal deed was found to have conveyed a fee simple interest, while the Armstrong, G.B. Stanton, and W.J. and B.F. Hayes deeds were found to have conveyed an easement for railroad purposes only.

[4]  State-level and county-level data for 1890 is not available because a fire destroyed the vast majority of records from the 1890 census.  Kellee Blake, First in the Path of the Firemen: The Fate of the 1890 Population Census, Nat'l Archives & Records Admin. Prologue Magazine, Spring 1996.

Moreover, the W.J. and B.F. Hayes deed's recited consideration of $70 was nominal compared to the recited consideration of $100 in the Henderson and Cannon deeds because of the difference in the amount of land conveyed.  The court finds it significant that the strip of land conveyed by the W.J. and B.F. Hayes deed was at least three to five times longer and approximately four times wider than the strips of land conveyed by the Henderson and Cannon deeds.  Plaintiffs' comparison of the $100 consideration to the $70 consideration therefore misses the mark because the parcel of land conveyed by the W.J. and B.F. Hayes deed (with the slightly lower consideration) was at least twelve to twenty times larger than the parcels of land conveyed by the Henderson and Cannon deeds (with the higher amount of consideration).  Similarly, the $150 consideration recited in the Hight deed is substantial compared to the $70 consideration recited in the W.J. and B.F. Hayes deed because the latter deed conveyed at least six times as much land as the Hight deed.  Indeed, the court observes that the $150 consideration recited in the Hight deed is actually a lower pro rata amount than the $100 consideration recited in either the Henderson or Cannon deeds when the size of the land conveyed is taken into account.

A similar analysis applies to the Lee deed, which also recites consideration of $150.  The W.J. and B.F. Hayes deed conveyed over three times as much land as the Lee deed for consideration ($70) that was less than half as much.  However, since the Lee deed conveyed almost twice as much land as the Hight deed for the same consideration, the consideration recited in the Lee deed is not determinative regarding whether a fee simple interest was conveyed.

However, there are other factors in the Lee deed, based on the terminology therein, that were not in any of the other deeds that the court found to have conveyed a fee simple interest.  In particular, the strip of land granted in the Lee deed was not described as a specific width, but rather was described as being limited to encompassing only the land that was "necessary for Railroad purposes for said Railroad," and the amount of consideration was determined by a "committee of arbitors selected . . . to assess the damage sustained by [W.B. Lee] on account of the right of way of the [railroad] passing through [W.B. Lee's] property . . . ."[5]  In other words, the Lee deed concluded a condemnation.  See Ga. Code Ann. § 1689(l) (1880) (providing that a railroad unable to obtain title to land or a right-of-way may "construct its railroad over any lands belonging to other persons" upon paying "just and reasonable compensation" and that the "damage done" to the property "sought to be condemned" is determined by a committee of citizens from the community).  As the parties agreed, under Georgia law a condemnation by a railroad results in an easement for railroad purposes only.  See, e.g., Atlanta B. & A. Ry. Co. v. Coffee Cty., 110 S.E. 214, 215 (Ga. 1921) (holding that land acquired by a railroad via condemnation reverts to the original owner when railroad use ceases).  The land description clause in the Lee deed also referred to the grant as a "right-of-way," which was the second such reference in the deed—the first reference being in the granting clause—whereas none of the other disputed deeds referred to the grant as a "right-of-way" after the granting clause.  Taken together, the language of the deed tends to indicate that W.B. Lee granted MG&AR and its successors an easement for railroad purposes only.  Accordingly, the court finds that it erred in not giving proper weight to these factors in its summary judgment ruling.

---

[5]  W.B. Lee did not use a standard form deed like most of the other grantors in this case, but this difference is immaterial since the language used was substantially similar.

In sum, the court properly weighed the relevant factors with respect to the Hight, Henderson, and Cannon deeds, but erred in weighing the relevant factors with respect to the Lee deed. Therefore, it must grant in part—with respect to the Lee deed—and deny in part—with respect to the Hight, Henderson, and Cannon deeds—this portion of plaintiffs' motion for reconsideration.

## C. The Court Properly Applied Georgia Law of Adverse Possession to Parcel 97

The dispute regarding Parcel 97 centers on the nature of the railroad's ownership of the rail corridor that is adjacent to that parcel.[6] Plaintiffs argued that the railroad obtained a prescriptive easement only, while defendant argued that the railroad obtained title in fee simple by adverse possession. In its summary judgment ruling, the court determined that the railroad obtained title in fee simple. Plaintiffs urge the court to reconsider, stating that the railroad never acquired fee title by adverse possession because it never used that portion of the rail corridor under color of title, thus Georgia law created a presumption of an easement only. If plaintiffs' argument is accurate, then the court must perform a new analysis that would result in a reversal of the court's prior ruling and warrant the granting of the motion for reconsideration under RCFC 59(a)(1). See Biery, 818 F.3d at 711. However, there was no such error.

To establish title by adverse possession, a party must demonstrate "possession that is in the right of the party asserting possession and not another and that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right." Kelley v. Randolph, 763 S.E.2d 858, 860 (Ga. 2014) (citing Ga. Code Ann. § 44-5-161 (2010)). Depending on the nature and extent of its claim of right, a party can establish either a prescriptive easement or fee simple title by satisfying the elements of adverse possession. For example, a party claiming an ownership interest in an easement (as opposed to outright ownership) or lacking exclusive possession (actual or constructive) of the entire disputed property may acquire a prescriptive easement because its claim of right is limited. See, e.g., Watkins v. Hartwell R.R. Co., 597 S.E.2d 377, 379 (Ga. 2004) (holding that the railroad "gained a right-of-way by prescription" through satisfying the requirements of adverse possession[7]). Meanwhile, a party that claims outright (i.e., fee simple) ownership or that establishes exclusive dominion over the land in question may gain fee simple title by adverse possession because its claim of right is absolute. See, e.g., Seignious v. Metro. Atlanta Rapid Transit Auth., 311 S.E.2d 808, 813 (Ga. 1984) (holding that the state gained fee simple title by adverse possession, having maintained railroad tracks in the disputed area for over ninety years).

It is undisputed that CGA and its predecessors continuously and exclusively used the portion of the rail corridor adjacent to Parcel 97 for over 100 years prior to the issuance of the NITU on August 12, 2013. In that sense, the parties agree that the railroad "adversely possessed"

---

[6] The portion of the rail corridor adjacent to Parcel 97 is parcel 6 on valuation map 70.

[7] As the court has previously explained, a railroad right-of-way is generally an easement for railroad purposes. Hardy, 127 Fed. Cl. at 12-13 (citing Jackson v. Sorrells, 92 S.E.2d 513, 514 (Ga. 1956)); Askew, 79 S.E.2d at 532; Duggan v. Dennard, 156 S.E. 315, 317 (Ga. 1930)).

the land in question.  However, they disagree regarding whether such adverse possession resulted in title to a prescriptive easement or title in fee simple.  Therefore, the only issue is the nature and extent of the railroad's claim of right.

Plaintiffs' myopic focus on color of title in addressing this issue is misplaced.  In Georgia, a party does not require color of title to establish title to land (either in fee simple or a prescriptive easement) by adverse possession.  Indeed, Georgia courts apply different statutory provisions in quiet title or other proceedings where ownership of land is asserted by adverse possession.  A claim based on color of title merely reduces, albeit by a significant amount of time, the applicable statutory period.  Compare Ga. Code Ann. § 44-5-163 (indicating that adverse possession for twenty years pursuant to Ga. Code Ann. § 44-5-161 results in good title), with Ga. Code Ann. § 44-5-164 (indicating that adverse possession under color of title untainted by fraud for seven years pursuant to Ga. Code Ann. § 44-5-161 results in good title[8]); accord Watkins, 597 S.E.2d at 379 (holding that the requirements of adverse possession were satisfied "with or without color of title" based on the facts of the case); Ga. Power Co., 482 S.E.2d at 368 (holding that the plaintiff's predecessor in interest established title by adverse possession both under color of title for seven years and without color of title for twenty years).  In other words, the lack of an original source conveyance or other written evidence of title—i.e., color of title— is simply not determinative in an adverse possession claim under Georgia law.

Further, a "claim of right" simply means "claiming the disputed property as [one's] own."  Kelley, 763 S.E.2d at 860; see also Cong. St. Props., LLC v. Garibaldi's, Inc., 723 S.E.2d 463, 465 (Ga. Ct. App. 2012) ("A claim of right is synonymous with a claim of ownership . . . ."), cert. denied, 2012 Ga. LEXIS 806.  Claiming title from a predecessor is not required.  Walker v. Sapelo Island Heritage Auth., 674 S.E.2d 925, 927 (Ga. 2009) (citing Ewing v. Tanner, 193 S.E. 243, 246 (Ga. 1937)).  A claim of right "will be presumed from the assertion of dominion, particularly where [it] is made by the erection of valuable improvements."  Chancey v. Ga. Power Co., 233 S.E.2d 365, 366 (Ga. 1977), quoted in Cong. St. Props. LLC, 723 S.E.2d at 465.

In Seignious, the railroad's maintenance of tracks in the disputed area for over ninety years was found to be "public, continuous, exclusive, uninterrupted, and peaceable."  311 S.E.2d at 813.  The state (which owned the railroad) met the "claim of right" requirement for adverse possession by, among other things, references to ownership of the land at issue in official state valuation maps and the state having "treated the property as its own and that its ownership [was] widely known."  Id.  In this case, during the 100-plus years that the railroad exercised continuous and exclusive possession of the relevant portion of the rail corridor, it similarly asserted exclusive dominion over the land and treated the property as its own by constructing and

---

[8]  Although section 44-5-164 of Georgia Code Annotated refers to "written evidence of title," the phrase "color of title" is often used interchangeably with the statutory description.  See, e.g., Haffner v. Davis, 725 S.E.2d 286, 288 (Ga. 2012) (equating "color of title" with "written evidence of title"); Ga. Power Co. v. Irvin, 482 S.E.2d 362, 368 (Ga. 1997) (defining "color of title" as a writing purporting to convey title (citing Capers v. Camp, 257 S.E.2d 517, 521 (Ga. 1979))).

maintaining the railroad tracks.  This is unlike what occurred in Watkins, where the railroad gained only a right-of-way by adverse possession because the railroad possessed only a portion of the property claimed as opposed to establishing exclusive dominion.  597 S.E.2d at 379-80.  Furthermore, the fact that the railroad's ownership was widely known in this case, as in Seignious, is shown by valuation maps from the early twentieth century reflecting that the railroad's ownership was "claimed by possessory title."[9]

Here, the railroad's assertion of exclusive dominion over the land, the railroad claiming the land as its own by possessory title rather than claiming an easement, and the railroad's ownership of the land being widely known collectively demonstrate that the railroad possessed the relevant portion of the rail corridor under a claim of right that was in the nature of a fee simple interest.  Therefore, since the railroad exclusively, notoriously, continuously, peaceably, and without interruption possessed the portion of the rail corridor adjacent to Parcel 97 under a claim of right in fee simple for over twenty years, the railroad obtained title in fee simple.

As with their focus on color of title with respect to the requirements for adverse possession, plaintiffs similarly misconstrue Georgia law regarding the presumption of an easement for railroad purposes.  Plaintiffs are correct that Georgia law allows railroads to acquire property for railroad use through condemnation or voluntary grant, that in such cases the acquisitions are generally easements for railroad purposes, and that possession by condemnation or limited-purpose easement expires when the railroad use is over.  However, the foregoing statement of law does not suggest that Georgia law prevents a railroad from acquiring land in fee simple.  To the contrary, MG&AR's charter gave it the power to "purchase, hold and convey real and personal property . . . and generally do anything and everything necessary to carry out the purposes of [its] incorporation."  1888 Ga. Laws 227.  MG&AR's power to acquire real property included the power to "purchase, condemn and acquire such right-of-way . . . and other real estate along its line . . . that may be necessary or proper for its use . . . ."  Id. at 228 (emphasis added).  In distinguishing "rights-of-way" from other interests in real estate, such as "title to land," the Georgia General Assembly demonstrated that a railroad's "right to acquire title to land or right-of-way," see id. (emphasis added), is not limited to acquiring nonpossessory interests such as easements, but can indeed include acquiring title to land in fee simple.

Moreover, section 1689 of the 1880 version of Georgia Code Annotated, cited often by plaintiffs, endows railroads with "the powers and privileges granted to corporations," which includes "procur[ing] . . . the title to the lands, or right of way, or other property necessary or proper" for railroad purposes.  (Emphasis added).  The clear demarcation between "right of way" and "other" property demonstrates that railroads have options for holding real estate beyond easements for railroad purposes.  See, e.g., Barber v. S. Ry. Co., 274 S.E.2d 336, 337 (Ga. 1981) (holding that certain deeds conveyed fee simple title to the railroad, while others conveyed easements (citing generally Jackson v. Rogers, 54 S.E.2d 132 (Ga. 1949) (deeds conveyed fee simple title) and Sorrells, 92 S.E.2d at 513 (deeds conveyed easements))).

---

[9] The record before the court does not reflect exactly when MG&AR's "claim[] by possessory title" began, but such specificity is not necessary here because there is no dispute that the twenty-year statutory period was met long before the NITU was issued on August 12, 2013.

-10-

In sum, the court properly applied Georgia law of adverse possession in holding that the railroad's possession of the portion of the rail corridor adjacent to Parcel 97 was held under a claim of right, and thus the railroad acquired title to that portion of the rail corridor in fee simple. Although not expressly stated in its summary judgment ruling, the court's underlying essential finding that title to real property can be held by Georgia railroads in fee simple was similarly correct. Therefore, the court must deny this portion of plaintiffs' motion for reconsideration.

## III.  CONCLUSION

For the foregoing reasons, the court **DENIES IN PART** and **GRANTS IN PART** the plaintiffs' motion for reconsideration. The parties shall file a joint status report **by no later than Friday, December 16, 2016**, indicating whether they wish to amend the scheduling order that is currently in place and, if so, setting forth a proposed schedule.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge