# In the United States Court of Federal Claims

No. 14-388L

(Filed: April 13, 2017)

```
*************************************
WILLIAM C. HARDY & BERTIE ANN        *
HARDY et al.,                        *
                                     *
            Plaintiffs,              *   Motion for Reconsideration; RCFC
                                     *   59(a)(1); Notice of Interim Trail Use; Fifth
v.                                   *   Amendment Taking; Effective Date of
                                     *   Taking; Duration of Taking
THE UNITED STATES,                   *
                                     *
            Defendant.               *
*************************************
```

Elizabeth A. Gepford McCulley, Kansas City, MO, for plaintiffs.

Stephen Finn, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Judge

Defendant moves, pursuant to Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for partial reconsideration of the court's May 4, 2016 ruling on the parties' cross-motions for summary judgment ("summary judgment ruling"). For the reasons set forth below, the court denies defendant's motion for reconsideration.

### I. BACKGROUND

In this Rails-to-Trails action, 112 plaintiffs contend that they own real property adjacent to a rail corridor in Newton County, Georgia. They assert that until 2013, the Central of Georgia Railroad Company ("CGA") and its predecessors held easements for railroad purposes that crossed their land.[1] According to plaintiffs, defendant United States then authorized the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trail Systems Act ("Trails Act"), conduct that resulted in a taking in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution.

Descriptions of the conflict's statutory and regulatory context, initial acquisition of the land in question, proceedings before the Surface Transportation Board ("STB"), and procedural

---

[1] The modern-day CGA is the successor in interest to the Middle Georgia and Atlantic Railway Company ("MG&AR"), which originally acquired the land at issue in this action.

history are provided in the court's summary judgment ruling and need not be repeated herein. See Hardy v. United States, 127 Fed. Cl. 1, 5-7 (2016).  In its summary judgment ruling, the court determined, among other issues, whether certain parcels of land were included within the parameters of the Notice of Interim Trail Use ("NITU") based on the NITU's description of the end of the rail line.  Pursuant to "established binding precedent" that is "unambiguous," the court declared:

> [T]he STB's issuance of a NITU effects a taking.  Events arising thereafter . . . have no bearing whatsoever on the existence of a Fifth Amendment taking. . . .  Because a NITU was issued here, a Fifth Amendment taking occurred . . . .  Accordingly, the affected plaintiffs are entitled to summary judgment on the issue of liability.

Id. at 21-22.  The court also observed that, contrary to defendant's position that the NITU was ambiguous regarding the end of the rail line, "the parameters of the NITU are settled by the plain language of the NITU, itself." Id. at 22 n.5 (citing Tr. of Oral Arg. 72, ECF No. 56); accord Order 2, Nov. 9, 2015, ECF No. 60.  The NITU, which was issued on August 19, 2013, described the rail line as follows:

> [A]pproximately 14.90 miles of rail line between milepost E 65.80 (at the point of the line's crossing of Route 229 in Newborn) and milepost E 80.70 (near the intersection of Washington Street, SW, and Turner Lake Road, SW, in Covington), in Newton County, [Georgia].[2]

Pls.' Resp. Ex. F at 1, ECF No. 103-6; Cent. of Ga. R.R. Co.—Abandonment Exemption—in Newton Cty., Ga., No. AB 290 (Sub-No. 343X), 2013 WL 4425647 (S.T.B. Aug. 19, 2013).

On September 28, 2016, CGA notified the STB that it had "entered into a Lease Agreement for interim trail use and rail banking for the entire line that was subject to abandonment . . . .  The Lease Agreement covers the line extending between mileposts E-65.80 and E-80.70 in Newton County, Georgia . . . ."  Notice Att. A at 1, ECF No. 89-1.  CGA attached a map of the rail line to its notice depicting milepost E-65.80 as being located in Newborn.  Id. at 3.

On October 14, 2016, CGA informed the STB that the precise location of milepost E-65.80 was incorrectly described in the notice of exemption and subsequent NITU, explaining that "the point of the Line's crossing of Route 229 in Newborn, Georgia" should instead read "a point just east of the Ziegler Road crossing west of downtown Newborn."  Def.'s Mot. App. A at 1-2,

---

[2] A notice of exemption containing the same description of the rail line, verbatim, had been served and published in the Federal Register one month prior.  Central of Georgia Railroad Company—Abandonment Exemption—in Newton County, Ga., 78 Fed. Reg. 43,273 (July 19, 2013).  The notice of exemption is also reproduced in its entirety at Exhibit B of plaintiffs' response.

ECF No. 96-1; see also Def.'s Mot. App. B, ECF No. 96-2 (noting that the lease agreement was also subject to the corrected location of milepost E-65.80). CGA attached a map of the rail line depicting milepost E-65.80 as being located west of Newborn. Def.'s Mot. App. A at 3, ECF No. 96-1; see also Def.'s Mot. App. B at 3, ECF No. 96-2 (updating the lease agreement).

On November 18, 2016, the STB issued a public notice of correction of the NITU, modifying the parenthetical description of milepost E-65.80 to read "(a point just east of Ziegler Road crossing west of downtown Newborn)" while leaving intact the remainder of the NITU.[3] Def.'s Mot. App. C at 2, ECF No. 96-3; Cent. of Ga. R.R. Co.—Abandonment Exemption—in Newton Cty., Ga., No. AB 290 (Sub-No. 343X), 2016 WL 6839539 at *1-2 (S.T.B. Nov. 18, 2013). Eleven plaintiffs collectively owning twelve parcels of land are affected by the modification to the NITU (the "affected plaintiffs"). Def.'s Mot. 2 n.1, ECF No. 96; Pls.' Resp. 1, ECF No. 103.

On November 28, 2016, the court issued an opinion and order partially reconsidering its summary judgment ruling. However, none of the issues addressed therein is relevant to the instant motion.

Defendant now moves for partial reconsideration of the court's summary judgment ruling, arguing that the correction to the NITU remedied a "ministerial error" only; thus, there was no "unequivocal act that demonstrates the necessary intent to abandon the rail line" constituting a taking of plaintiffs' land between the corrected description of milepost E-65.80's location and the original description of milepost E-65.80's location. Def.'s Mot. 6, ECF No. 96. Plaintiffs, on the other hand, emphasize that the original NITU's issuance effected a taking, and that later-occurring events—including corrections to the NITU—"are relevant to the duration of the taking, not whether a taking occurred." Pls.' Resp. 5, ECF No. 103. Thus, plaintiffs assert, "under the bright-line rule announced by the [United States Court of Appeals for the Federal Circuit ("Federal Circuit")] in Caldwell, Barclay, and Ladd [I], the taking for [the affected plaintiffs] is a temporary taking that started on August 19, 2013 and ended on November 18, 2016." Id. at 6.

Defendant's motion is fully briefed, and the court considers oral argument unnecessary.

## II. DISCUSSION

### A. Standard of Review

A motion for reconsideration is a request for "extraordinary" relief and is not an avenue for a dissatisfied party to simply relitigate the case. Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision). Thus, such a motion does not allow a party to

---

[3] A concomitant correction to the notice of exemption was published in the Federal Register five days later. Central of Georgia Railroad Company—Abandonment Exemption—in Newton County, Ga., 81 Fed. Reg. 84,673 (Nov. 23, 2016).

raise arguments that it failed to raise previously or reassert arguments that have already been considered. Four Rivers Invs., 78 Fed. Cl. at 664. Pursuant to RCFC 59(a)(1), the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (internal quotation marks omitted). A decision on a motion for reconsideration is within the discretion of the trial court. See Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

**B. Issuance of a NITU Effects a Taking Regardless of the Railroad's Intent to Abandon the Rail Line or Subsequent Events**

In its motion for partial reconsideration, defendant does not argue that there has been an intervening change in the law, that the court made a clear factual or legal error, or that there has been a manifest injustice. Rather, it contends that the amended NITU is newly discovered evidence that was previously unavailable.[4] At issue here is the impact of the amendment on the original NITU.

As the court explained in its summary judgment ruling, it is well established under binding precedent that issuance of a NITU effects a taking. Hardy, 127 Fed. Cl. at 21-22 (citing Ladd v. United States ("Ladd I"), 630 F.3d 1015, 1024 (Fed. Cir. 2010); Barclay v. United States, 443 F.3d 1368, 1378 (Fed. Cir. 2006)); see also Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015) ("As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a [NITU] . . . ."[5]). This is a bedrock principle of Rails-to-Trails case law.

Defendant's focus on CGA's intent to abandon the rail line, see, e.g., Def.'s Mot. 6, ECF No. 96; see generally Def.'s Reply, ECF No. 113, is "contrary to established binding precedent," Hardy, 127 Fed. Cl. at 21. The NITU's issuance "is the only event that must occur" for accrual of a Trails Act takings claim.[6] Barclay, 443 F.3d at 1373. In Ladd I, the Federal Circuit explained that events occurring after a NITU is issued are irrelevant in determining whether there

---

[4] Defendant also implicitly suggests that the NITU was ambiguous regarding the rail line's eastern terminus and that the proper focus is on CGA's intent to abandon the rail line. However, the court previously considered and rejected those arguments. See Hardy, 127 Fed. Cl. at 21-22. Thus, they are improper grounds upon which to move for reconsideration.

[5] Whether there is a taking depends on whether the claimant holds a "valid interest in the property-at-issue." Rogers, 814 F.3d at 1303 (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001)).

[6] A railroad cannot abandon a rail line without permission from the STB, and a NITU blocks vesting of state law reversionary interests by preventing abandonment. Rogers, 814 F.3d at 1303; Barclay, 443 F.3d at 1374. Thus, a NITU renders moot the issue of the railroad's intent regarding abandonment.

has been a compensable taking.  630 F.3d at 1024-25.  The Federal Circuit specified that a taking occurs upon issuance of a NITU even if (1) a railroad is still operating or (2) a trail use agreement and subsequent conversion of the railway to a recreational trail never materialize.  <u>Id.</u> at 1024; <u>see also</u> <u>Caldwell</u>, 391 F.3d at 1234-35 (explaining that issuance of a NITU "marks the 'finite start' to either temporary or permanent takings claims" even though "the precise nature of the takings claim . . . will not be clear at the time it accrues").  Therefore, as the court explained in its earlier ruling, events subsequent to a NITU "have no bearing whatsoever on the existence of a Fifth Amendment taking. . . . Because a NITU was issued here, a Fifth Amendment taking occurred, regardless of whether the rail line was abandoned."  <u>Hardy</u>, 127 Fed. Cl. at 21-22.  "Post-NITU events may affect the duration of, and compensation for, the taking, but they do not foreclose the NITU from effecting the taking in the first instance."  <u>James v. United States</u>, 130 Fed. Cl. 707, 733 (2017) (internal quotation marks omitted).

The Federal Circuit has previously confronted the issue of multiple NITUs impacting a rail line, explaining that "a claim alleging a Fifth Amendment taking accrues when the act that constitutes the taking occurs.  In the context of Trails Act cases, the cause of action accrues when the government issues the <u>first</u> NITU that concerns the landowner's property."[7]  <u>Ladd v. United States ("Ladd II")</u>, 713 F.3d 648, 652 (Fed. Cir. 2013) (emphasis added) (citation and internal quotation marks omitted).  In other words, if there are multiple NITUs, "'the issuance of the original NITU,' rather than subsequent NITUs, is the event that 'triggers the accrual date of the cause of action.'"  <u>Id.</u> at 654 (quoting <u>Barclay</u>, 443 F.3d at 1378).  In this case, defendant concedes that there is a distinction between "the [original] NITU issued on August 19, 2013[,] and the NITU as corrected on November 18, 2016."  Def.'s Reply 2, ECF No. 113.

### C. Defendant Can Only Prevail If the NITU's Amendment Is Retroactive

Here, defendant essentially posits that the November 18, 2016 amendment to the NITU to correct the description of the end of the rail line is retroactive.  Defendant characterizes the error in the original description of milepost E-65.80's location as "ministerial" and the amendment as a mere "administrative correction," emphasizing that the actual location of the end of the rail line did not change.  Def.'s Mot. 6, ECF No. 96.  Retroactive application of the amendment to the NITU is the only possible avenue for defendant to prevail on the instant motion since, as explained above, events occurring after a NITU is originally issued—including a subsequent NITU or failure to abandon the rail line—are wholly irrelevant to whether a taking has occurred.

If defendant is correct in its assertion that the amendment to the NITU is retroactive, the court must perform a new analysis that would result in a reversal of the court's prior ruling concerning the affected plaintiffs and warrant granting defendant's motion for partial reconsideration under RCFC 59(a)(1).  <u>See</u> <u>Biery</u>, 818 F.3d at 711.  Therefore, the court must determine whether the November 18, 2016 amendment relates back to the NITU's original August 19, 2013 issue date (thus warranting partial reconsideration) or is effective as a subsequent NITU (thus making partial reconsideration improper).

---

[7] A possible exception to the claim accrual suspension rule, which was the focus of <u>Ladd II</u>, 713 F.3d at 652-53, does not apply here because the affected landowners were sufficiently aware of the original NITU to file suit within six years of its issuance.

#### D. The NITU's Amendment Was Not Retroactive

The court concludes that the amendment to the NITU does not relate back to the NITU's original issue date, and is more properly viewed as a subsequent NITU. Here, the STB issued a NITU on August 19, 2013, that, by its own terms, extended east to "the point of the line's crossing of Route 229 in Newborn." Pls.' Resp. Ex. F at 1, ECF No. 103-6. On September 28, 2016, CGA notified the STB that an indefinite trail use agreement had been reached "for the entire line." Notice Att. A at 1, ECF No. 89-1; accord Def.'s Mot. App. C at 1, ECF No. 96-3. Approximately two weeks later, on October 14, 2016, CGA clarified that the indefinite trail use agreement extended east only as far as "a point just east of the Ziegler Road crossing west of downtown Newborn." Def.'s Mot. App. A at 1-2, ECF No. 96-1; Def.'s Mot. App. B at 3, ECF No. 96-2. On November 18, 2016, the STB issued its decision amending the NITU accordingly. Def.'s Mot. App. C at 2, ECF No. 96-3; Cent. of Ga. R.R., 2016 WL 6839539 at *1-2.

In situations where a trail use agreement is reached that covers less land than the original NITU, the STB reopens the abandonment proceedings, vacates the original NITU, and issues a "replacement" NITU "for only the portion of the right-of-way covered by the interim trail use agreement." 49 C.F.R. § 1152.29(h) (2016). In other words, the updated NITU does not relate back to the original NITU issue date, and is treated as a separate NITU.

The issue of an updated NITU is not one of first impression. In Illig v. United States, 67 Fed. Cl. 47 (2005), aff'd, 274 F. App'x 883 (Fed. Cir. 2008) (unpublished decision), a trail use agreement was reached for an entire line covered by a NITU. Id. at 49. Approximately five years after the original NITU was issued, the underlying trail use agreement was reduced by approximately 0.21 miles. Id. at 49-50. Accordingly, the abandonment proceedings were reopened, and the original NITU was vacated with respect to the segment of the rail line no longer encompassed by the trail use agreement. Id. at 50. Relying on the Federal Circuit's decision in Caldwell, the Illig court determined that a takings claim accrued when the original NITU was issued, despite the NITU's later reduction in scope. Id. at 54.

Here, as in Illig, when the NITU was changed (years later) to reflect the updated trail use agreement, it covered less land than the original NITU, as illustrated by the fact that twelve parcels of land owned by eleven plaintiffs in this case are no longer subject to the NITU. Moreover, the STB decision amending the NITU in this case was, by its own terms, made "effective on its date of service"—i.e., November 18, 2016—not retroactively. Def.'s Mot. App. C at 2, ECF No. 96-3; Cent. of Ga. R.R., 2016 WL 6839539 at *2. Therefore, the NITU's amendment is properly viewed as a subsequent NITU, and thus has no bearing on the accrual of a takings claim based on the original NITU.

### III. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, the court finds them unpersuasive or without merit.

It is well settled that "the STB's issuance of a NITU effects a taking." Hardy, 127 Fed. Cl. at 21. Events occurring after the original NITU is issued—such as abandonment of the rail

line, subsequent restoration of rail service, consummation of a trail use agreement, failure to consummate a trail use agreement, or amendment of the NITU—are irrelevant to the existence of a takings claim, but may impact the duration of the taking.  The STB issued an amended NITU in this case.  Consequently, the court's conclusion that the original NITU effected a taking of the affected plaintiffs' property need not be disturbed.  Rather, the amendment of the NITU only bears upon the duration of the taking suffered by the affected plaintiffs.  In short, the affected plaintiffs suffered a temporary taking from August 19, 2013 (the issue date of the original NITU) to November, 18, 2016 (the date the NITU was modified).

Accordingly, defendant's motion for partial reconsideration is **DENIED**.  The issue of damages will be addressed at the upcoming valuation trial.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge