# In the United States Court of Federal Claims

No. 14-388L

(Filed: October 18, 2021)

```
*************************************
WILLIAM C. HARDY & BERTIE ANN      *
HARDY et al.,                      *
                                   *
              Plaintiffs,          *
                                   *   RCFC 59; Motion for Reconsideration;
     v.                            *   Rails-to-Trails; Causation; Cedar Point
                                   *   Nursery
                                   *
THE UNITED STATES,                 *
                                   *
              Defendant.           *
*************************************
```

Elizabeth A. Gepford McCulley, Kansas City, MO, for plaintiffs.

David A. Harrington, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

On April 8, 2021, the court issued an opinion denying plaintiffs' motion for summary judgment, concluding that defendant was not liable for a taking with respect to eleven parcels located east of milepost 65.80 ("MP-65.80 parcels") in Newton County, Georgia. Plaintiffs now move for reconsideration of that opinion in light of the United States Supreme Court's ("Supreme Court") recent decision in Cedar Point Nursery v. Hassid, 141 S. Ct. 2063 (2021). For the reasons discussed below, the court denies plaintiffs' motion.

### I. BACKGROUND

The court has extensively chronicled the dispute surrounding the MP-65.80 parcels and will not repeat it here in full. See Hardy v. United States ("Hardy VII"), 153 Fed. Cl. 287, 289-91 (2021). In short, plaintiffs own real property subject to easements for railroad purposes in Newton County, Georgia. Defendant authorized the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trails System Act ("NTSA"), conduct that resulted in a taking in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution. Of the 156 parcels at issue in this case, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed defendant's liability for a taking with respect to 145 of them. Hardy v. United States ("Hardy VI"), 965 F.3d 1338 (Fed. Cir. 2020).

The remaining eleven parcels presented a unique scenario. The Central of Georgia Railroad ("CGA") initially requested authority to abandon "approximately 14.90 miles of rail line between milepost E 65.80 (at the point of the lines crossing of Route 229 in Newborn) and milepost E 80.70 (near the intersection of Washington Street SW., and Turner Lake Road SW., in Covington), in Newton County, Ga." Central of Georgia Railroad Company–Abandonment Exemption–in Newton County, Ga., 78 Fed. Reg. 43,273 (July 19, 2013). The United States Surface Transportation Board ("Surface Transportation Board") copied this description verbatim when it issued the Notice of Interim Trail Use or abandonment ("NITU"). Cent. of Ga. R.R. Co.–Abandonment Exemption–in Newton Cnty., Ga., No. AB 290 (Sub-No. 343X), 2013 WL 4425647 (S.T.B. Aug. 19, 2013). But the description of MP-65.80, CGA later discovered, was incorrect. The descriptive parenthetical should have indicated that the milepost is located at "a point just east of the Ziegler Road crossing west of downtown Newborn." Corletto Decl. ¶ 7. CGA notified the Surface Transportation Board of the error, and the Surface Transportation Board corrected the NITU. Cent. of Ga. R.R. Co.—Abandonment Exemption—in Newton Cnty., Ga., No. AB 290 (Sub-No. 343X), 2016 WL 6839539, at *1-2 (S.T.B. Nov. 18, 2016).

The eleven parcels at issue were included in the August 2013 NITU, but not in the corrected NITU. On remand from the Federal Circuit, this court was instructed to answer "the question of whether and when the Railroad would have abandoned the portion of its rail line east of milepost E-65.80 absent the August 2013 NITU." Hardy VI, 965 F.3d at 1350. The court emphasized that it was bound by the Federal Circuit's decisions in Caquelin v. United States, 959 F.3d 1360 (Fed. Cir. 2020), and Hardy VI. Hardy VII, 153 Fed. Cl. at 294. Thus, it indicated that it would evaluate the MP-65.80 parcels according to the causation rule laid out in Caquelin: "[A] NITU does not effect a taking if, even in the absence of a NITU, the railroad would not have abandoned its line (a necessary prerequisite for termination of the easement under state law) during the period of the NITU . . . ." Caquelin, 959 F.3d at 1363. After examining evidence related to Surface Transportation Board filings, CGA's explanation of its intent not to abandon, and the actions CGA took to maintain control over that section of the line, the court concluded that CGA would not have abandoned the line adjacent to the MP-65.80 parcels, had the NITU not been issued. Hardy VII, 153 Fed. Cl. at 296. Thus, defendant was not liable for a taking of those parcels. Id. at 296-97.

On June 23, 2021, the Supreme Court issued its decision in Cedar Point, which analyzed the taking implications of a California regulation that allowed labor organizations to access the property of agricultural employers to discuss unionization with employees. 141 S. Ct. at 2069. Two employers—fruit growers—objected to the regulation's unilateral grant of access to their private property, asserting that this uncompensated right of access was an unconstitutional per se physical taking. Id. at 2069-70. The Court agreed. Rejecting the application of the tests outlined in Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978), and Arkansas Game & Fish Commission v. United States, 568 U.S. 23 (2012), the Court explained that a government-authorized physical invasion of private property constitutes a per se physical taking. Cedar Point, 141 S. Ct. at 2074, 2077-79. This is true, the Court emphasized, whether the physical appropriation is permanent or temporary. Id. at 2074.

In light of the Supreme Court's decision, plaintiffs filed their motion for reconsideration on July 6, 2021. Plaintiffs read Cedar Point as "completely reject[ing] the notion that any Court must engage in a detailed multi-factored analysis to determine the 'causation' in a Trails Act takings case . . . ." Pls.' Mot. 5. Because Cedar Point invalidates Caquelin, plaintiffs claim, the court must disregard the Federal Circuit's specific instructions and reconsider its Hardy VII opinion, thus finding defendant liable for a taking of the MP-65.80 parcels that were erroneously identified and not part of the corrected NITU. Id. at 1, 8. In response, defendant maintains that "[t]he Supreme Court in Cedar Point did not discuss, much less change, established causation principles." Def.'s Resp. 2. Neither party requested oral argument, and the court finds it unnecessary. This motion is now fully briefed and ripe for adjudication.

## II. STANDARD FOR DECISION

A motion for reconsideration under Rule 59(a) of the Rules of the United States Court of Federal Claims ("RCFC") is a request for extraordinary relief and is not to be used by a dissatisfied party to relitigate the case. Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision). Consequently, such a motion "does not provide an occasion for a party 'to raise arguments that it could have raised previously, but did not'" or to "reassert arguments that the Court already has considered." Four Rivers Invs., Inc., 78 Fed. Cl. at 664 (quoting Browning Ferris Indus., Inc. & Subsidiaries v. United States, No. 05-738T, 2007 WL 1412087, at *1 (Fed. Cl. May 10, 2007)). However, the court may grant a motion for reconsideration if "there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (Fed. Cl. 2010)). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); accord Biery, 818 F.3d at 711.

## III. DISCUSSION

Plaintiffs move for reconsideration based on an alleged change in the controlling law. Pls.' Mot. 2 ("This is clearly not a situation where an unhappy litigant or a dissatisfied party is attempting to relitigate the case but, rather, this is a rather obvious instance where the controlling law has changed."), 8 (urging the court to grant reconsideration "based on the Supreme Court's intervening decision in Cedar Point Nursery"). Thus, the court focuses narrowly on whether Cedar Point requires it to disregard the instructions of the Federal Circuit and reach a different conclusion regarding the application of Caquelin to the MP-65.80 parcels. The court concludes that it does not.

### A. Plaintiffs Offer a Tortured Interpretation of the <u>Caquelin</u> Legal Standard for the Timing of a NITU-Based Taking Under <u>Caldwell</u> and Its Progeny

Before exploring the implications of <u>Cedar Point</u>, the court addresses plaintiffs' depiction of <u>Caquelin</u> itself. The court begins by stating a settled principle of law: The frameworks set out in <u>Arkansas Game</u> and <u>Penn Central</u> do not apply to per se physical takings of any duration. Indeed, in <u>Caquelin</u>, the Federal Circuit decisively rejected the application of <u>Arkansas Game</u> and <u>Penn Central</u> to takings triggered by the issuance of a NITU under the NTSA.[1] <u>Caquelin</u>, 959 F.3d at 1366-70. Similarly, in <u>Cedar Point</u>, the Supreme Court emphasized that these frameworks are irrelevant where the government has physically appropriated private property. 141 S. Ct. at 2072, 2078-79. Plaintiffs repeatedly, enthusiastically embrace these holdings. E.g., Pls.' Mot. 5-8; Pls.' Reply 13-14. Defendant, at least for the purposes of plaintiffs' motion, does not dispute them.

But plaintiffs misapply this settled principle of per se physical takings law by conflating the analysis in <u>Arkansas Game</u> and <u>Penn Central</u> with the <u>Caquelin</u> causation rule. <u>Cedar Point</u>, plaintiffs maintain, "completely debunked a 'causation' analysis in a trails act takings case, purportedly based on a multi-factor analysis as set forth in <u>Arkansas Game</u> or otherwise . . . ." Pls.' Mot. 6; accord Pls.' Reply 14. Relatedly, plaintiffs claim: "[I]f the [<u>Caquelin</u>] panel [had] the benefit of <u>Cedar Point Nursery</u>, [it] would not have remanded the case for a 'multi-factor causation' analysis because the Supreme Court said this analysis is 'unique' to government-induced flooding cases."[2] Pls.' Mot. 7. Such characterizations of <u>Caquelin</u> are misleading.[3]

---

[1] The <u>Arkansas Game</u> takings framework is applicable in takings cases predicated upon flooding, while <u>Penn Central</u> is the landmark decision that sets forth the appropriate takings analysis in regulatory takings cases.

[2] Although plaintiffs' use of quotations marks in this excerpt suggests that plaintiffs took the phrase "multi-factor causation" directly from <u>Cedar Point</u> or <u>Caquelin</u>, this phrase does not appear in either decision.

[3] Plaintiffs' muddled use of <u>Caquelin</u> necessitates a brief review of that case's procedural history. In the Federal Circuit's first, unreported decision in <u>Caquelin</u>, the Federal Circuit remanded the matter to the United States Court of Federal Claims ("Court of Federal Claims"), emphasizing that "a more fully developed record will materially aid this court in deciding how ultimately to resolve the merits of the takings issues presented." 697 F. App'x 1016, 1020 (Fed. Cir. 2017). Specifically, the Federal Circuit instructed the court to apply a multi-factor analysis based on <u>Arkansas Game</u>, as advocated by the government at the time. Id. at 1019-20. The Federal Circuit explicitly stated that that it was not "prejudg[ing] the merits of the takings issues," but merely further developing the record to "give the [Federal Circuit] a concrete basis for comparison of the competing legal standards as applied." Id. at 1020. On remand, the Court of Federal Claims understood that it was "charged with an atypical task" of "teeing up the problem for the Federal Circuit to determine if en banc review is necessary" to reevaluate the governing precedent. 140 Fed. Cl. 564, 578-79 (2018). The court applied the <u>Arkansas Game</u> factors as instructed, and the matter returned to the Federal Circuit. <u>Caquelin</u>, 959 F.3d at 1363.

Indeed, Caquelin bears little resemblance to Arkansas Game or Penn Central, and it promulgates no multifactor test. It "clarifies . . . 'the timing of a NITU-based taking' under Caldwell and its progeny," but nothing more. Hardy VI, 965 F.3d at 1349 (quoting Caquelin, 959 F.3d at 1370). Immediately before it articulated its causation rule, the Caquelin court explicitly noted that it was rejecting "a multi-factor approach to the takings question here . . . ." 959 F.3d at 1370. This statement accords with the Supreme Court's recognition that physical occupation "is a taking without regard to other factors that a court might ordinarily examine." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 432 (1982). But the Supreme Court also provides context for what "other factors" it finds inapplicable to per se physical takings – specifically, those associated with regulatory takings. E.g., id. (juxtaposing the Penn Central factors with the more straightforward approach applied to a "physical invasion" of property); Horne v. Dep't of Agric., 576 U.S. 350, 360 (2015) (emphasizing the inapplicability of "other factors" such as "the claimed public benefit or the economic impact on the owner" to the physical appropriation of property); see also Preseault v. United States ("Preseault II"), 100 F.3d 1525, 1540 (Fed. Cir. 1996) (noting that physical takings and regulatory takings are "two quite different situations [that] call for quite different analyses"). Unsurprisingly, plaintiffs identify numerous decisions in which courts prohibit the application of the Penn Central factors to per se physical takings. However, the court rejects plaintiffs' non sequitur that because the causation analysis in Penn Central and Arkansas Game does not apply in rails-to-trails takings cases, the court should not conduct the causation analysis directed by Caquelin.

As the Federal Circuit thoroughly explained, Caquelin shares no lineage with Penn Central or Arkansas Game. See Caquelin, 959 F.3d at 1370-72. Instead, the Caquelin causation rule was sparked by Caldwell v. United States, which concluded: "[A] Fifth Amendment taking, if any, under the Trails Act is accomplished when [a] NITU is issued and state law reversionary interests that would otherwise take effect pursuant to normal abandonment proceedings are forestalled." 391 F.3d at 1236 (emphasis added). Caquelin simply offers a "fuller formulation" of the legal principles already quite present in Caldwell. Caquelin, 959 F.3d at 1372. Moreover, Caquelin is further bolstered by the causation principles underlying decisions such as St. Bernard Parish Gov't v. United States, 887 F.3d 1354 (Fed. Cir. 2018), and Ladd v. United States, 630 F.3d 1015 (Fed. Cir. 2010). Caquelin, 959 F.3d at 1370-72. The court thus approaches Caquelin not as a relative of Penn Central and Arkansas Game, and not as part of a "multifactor" analysis newly generated by the Federal Circuit, but as an acknowledgement that causation must be established in every takings case.[4]

---

This time, the Federal Circuit decisively rejected the application of Arkansas Game or Penn Central to the categorical-taking analysis used in rails-to-trails cases. Id. at 1363, 1368-69.

[4] In their reply in support of their motion for reconsideration, plaintiffs also make an argument regarding the scope of railroad purposes easements, apparently grounded in Preseault II. Plaintiffs assert that "[i]f [a] taking occurs because use is authorized beyond the scope of [a railroad purposes] easement, whether the line would have been abandoned or not is irrelevant." Pls.' Reply 9; see also id. at 8 (contending that evaluation of a potential taking in the rails-to-trails context "has nothing to do with abandonment principles . . ."). This argument was not raised in plaintiffs' motion for reconsideration and therefore is waived. See SmithKline

## B. <u>Cedar Point</u> Is Not Relevant to the <u>Caquelin</u> Causation Rule

Having clarified the nature of the <u>Caquelin</u> causation rule, the court addresses its relationship to <u>Cedar Point</u>. In short, <u>Cedar Point</u> neither invalidates <u>Caquelin</u> nor weakens this court's causation analysis in <u>Hardy VII</u>. The court's conclusion rests on two grounds. First, <u>Cedar Point</u> makes no mention of rails-to-trails takings cases, much less of the <u>Caquelin</u> causation rule. As defendant emphasizes, "[t]he only reference to causation in the entire decision is the bare observation that 'flooding can present complex questions of causation.'" Def.'s Resp. 3 (quoting <u>Cedar Point</u>, 141 S. Ct. at 2078). Instead, <u>Cedar Point</u> addressed a unique, narrow question: whether a state access regulation, which allowed union organizers intermittent access to the growers' properties without their consent, constituted a per se physical taking. The Supreme Court wrestled with several complex matters of takings law—the precise nature of the property interest taken, the significance of the taking's duration, and so on—but causation was not one of them. In this context, the court does not read <u>Cedar Point</u>'s failure to discuss causation as evidence that it intended to actively prohibit this inquiry in rails-to-trails cases.

Second, when applied hypothetically to the facts of <u>Cedar Point</u>, the <u>Caquelin</u> causation rule works in harmony with the Supreme Court's reasoning. <u>Caquelin</u> instructs courts to compare "the plaintiff's property interest in the presence of the challenged government action and the property interest the plaintiff would have had in its absence." 959 F.3d at 1371. If the plaintiff lacks the allegedly-taken property interest in the absence of that government action, no taking has occurred. <u>Id.</u> In <u>Cedar Point</u>, in the presence of the challenged regulation, the growers lost their right to exclude, "'one of the most treasured' rights of property ownership." 141 S. Ct. at 2072 (quoting <u>Loretto</u>, 458 U.S. at 435). In the absence of that regulation, "no one disputes that . . . the growers would have had the right under California law to exclude union organizers from their property." <u>Id.</u> at 2076. The growers would have certainly retained their right to exclude in the absence of the regulation and, thus, <u>Cedar Point</u> easily satisfies <u>Caquelin</u>'s threshold "causation inquiry." <u>See</u> <u>Caquelin</u>, 959 F.3d at 1371. Rather than overruling <u>Caquelin</u> sub silentio, <u>Cedar Point</u> tacitly implements the same causation principles.

Plaintiffs have asked this court to "take the extraordinary step" of contravening a binding decision from a higher court. <u>See</u> <u>Int'l Bus. Machs. Corp. v. United States</u>, 59 F.3d 1234, 1239 (Fed. Cir. 1995). Even if <u>Cedar Point</u> had somehow weakened <u>Caquelin</u>, the court would not grant reconsideration in this matter. The Court of Federal Claims must follow the binding decisions of higher courts, even if other precedent has indirectly undermined those decisions. <u>Coltec Indus., Inc. v. United States</u>, 454 F.3d 1340, 1353 (Fed. Cir. 2006); <u>accord</u> <u>Fla. League of Pro. Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 462 (11th Cir. 1996) (Lower courts "are not at

---

<u>Beecham Corp. v. Apotex Corp.</u>, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived."); <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs <u>reply</u> to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). In any event, this newly-advanced argument is not relevant to the question at hand regarding the ramifications of <u>Cedar Point</u>. The court therefore declines to consider it.

liberty to disregard binding case law that is . . . closely on point and has been only weakened, rather than directly overruled, by the Supreme Court."). Therefore, barring a Supreme Court decision explicitly rejecting a causation inquiry in rails-to-trails cases, the court will leave to the Federal Circuit "the prerogative of overruling its own decisions." See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).[5]

## IV. CONCLUSION

Because no intervening change in the controlling law has eroded Caquelin or any of the court's post-Caquelin decisions in this matter, the court **DENIES** plaintiffs' motion for reconsideration.

**IT IS SO ORDERED.**

> s/ Margaret M. Sweeney
> MARGARET M. SWEENEY
> Senior Judge

---

[5] The court must also address plaintiffs' briefing of this matter. Plaintiffs' motion for reconsideration advances remarkable claims regarding Cedar Point and its relationship to Caquelin. For example, plaintiffs state:

- "[The Cedar Point] Court has concluded that the issuance of the NITU causes a per se physical taking when the NITU is issued." Pls.' Mot. 3.

- "[The Cedar Point] Court debunked [the Caquelin causation rule] by clearly and explicitly stating that any 'causation' analysis is unique to government-induced flooding cases and does not and cannot extend to trails act takings cases or any other per se takings case . . . ." Id. at 7.

- "[A]s clearly enunciated in Cedar Point Nursery, there is no causation requirement in a Trails Act takings case because the issuance of the NITU is the only causation necessary because the issuance of the NITU triggers a per se categorical taking when it is issued." Pls.' Reply 2.

These statements are imprecise and typify the many ways in which plaintiffs misconstrue Cedar Point throughout their briefs. As discussed above, Cedar Point makes no mention of the NTSA or rails-to-trails litigation, and it barely mentions the concept of causation. Plaintiffs' statements give "a misleading impression of the state of the law on the point." See Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1355 (Fed. Cir. 2003). The court urges counsel to be more precise in how they describe courts' holdings in future filings.