# In the United States Court of Federal Claims

No. 14-388L

(Filed: March 28, 2022)

```
*************************************
WILLIAM C. HARDY & BERTIE ANN        *
HARDY et al.,                        *
                                     *
              Plaintiffs,            *   Uniform Relocation Assistance and Real
                                     *   Property Acquisition Policies Act; RCFC
     v.                              *   54(d); Supplemental Motion for Attorneys'
                                     *   Fees; Reasonableness of Fees and Costs
THE UNITED STATES,                   *
                                     *
              Defendant.             *
*************************************
```

Elizabeth A. Gepford McCulley, Kansas City, MO, for plaintiffs.

David A. Harrington, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

On December 17, 2021, the court awarded $1,975,039.16 in attorneys' fees and costs to plaintiffs in the above-captioned matter under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"). Plaintiffs filed a supplemental motion for attorneys' fees several days later, seeking an additional $83,261.50 in fees. As explained below, the court grants plaintiffs' motion in part and awards $70,772.27 in fees.

### I. BACKGROUND

Plaintiffs in this rails-to-trails action own real property adjacent to railroad rights-of-way in Newton County, Georgia. Defendant authorized the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trails System Act, conduct that resulted in a taking in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution. Of the 173 parcels at issue in this case, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed defendant's liability for a taking with respect to 145 of them (the "successful claims"). On November 3, 2020, at plaintiffs' request, the court entered judgment under Rule 54(b) the Rules of the United States Court of Federal Claims ("RCFC") for plaintiffs on those claims.

As for the remaining parcels, determining liability required additional litigation. The Federal Circuit affirmed this court's finding that seventeen of these parcels were owned in fee

simple by the railroad. However, the Federal Circuit vacated the court's conclusion that defendant was liable for a temporary taking of the other eleven parcels, all of which lie east of milepost 65.80 ("MP-65.80 parcels"). Concluding that the causation inquiry outlined in Caquelin v. United States, 959 F.3d 1360 (Fed. Cir. 2020)—a decision that postdated this court's ruling—was not adequately considered during the proceedings before this court, the Federal Circuit instructed this court to address the issue on remand.

In the wake of the Federal Circuit's decision, the court ordered the parties to brief two separate matters. First, the court instructed the parties to submit cross-motions for summary judgment regarding whether the Caquelin causation standard was satisfied with respect to the MP-65.80 parcels.[1] The court ultimately determined that defendant was not liable for a taking of the MP-65.80 parcels and therefore granted defendant's cross-motion on April 8, 2021. On July 6, 2021, plaintiffs filed a motion for reconsideration of that decision, which the court denied on October 18, 2021. Second, because the parties had been unable to reach an agreement regarding an award of litigation expenses under the URA, the court instructed plaintiffs to file a motion for attorneys' fees and costs. In compliance with the court's deadline, plaintiffs filed the motion on January 28, 2021 ("initial fees motion"). The motion concerned the fees and costs plaintiffs incurred through October 30, 2020. Plaintiffs explained:

> The cut-off date of October 30, 2020 was used as a matter of convenience given the schedule adopted by the Court for supplemental briefing on the causation issue associated with the parcels east of MP 65.80. Ultimately, additional fees and costs have been incurred as a result of the additional briefing with respect to the parcels east of MP 65.80 and Plaintiffs' counsel will address that issue further herein and will ultimately address supplemental fees and costs incurred after October 30, 2020 when the Court issues its ruling with respect to causation.

Pls.' Initial Fees Mot. 7 n.13. Briefing on that motion did not conclude until June 17, 2021. The court then stayed consideration of the motion until after it had ruled on plaintiffs' July 6, 2021 motion for reconsideration. Ultimately, on December 17, 2021, it issued a decision awarding plaintiffs $1,553,202.31 in attorneys' fees and $421,836.85 in costs. On the same day, the court entered judgment.

On December 22, 2021, plaintiffs filed the instant supplemental motion for attorneys' fees ("supplemental fees motion"), requesting reimbursement for the following hours billed between November 2, 2020, and May 14, 2021:

---

[1] The parties had informed the court that they did not believe further discovery was necessary.

| Timekeeper | Hours | Hourly Rate | Fees |
|---|---:|---:|---:|
| Thomas S. Stewart | 111.10 | $595 | $66,104.50 |
| Elizabeth McCulley | 19.60 | $495 | $9,702.00 |
| Rosemarie Allen | 8.30 | $175 | $1,452.50 |
| Grant Houske | 34.30 | $175 | $6,002.50 |
|  | 173.30 |  | $83,261.50 |

Defendant opposes the motion on two grounds. Principally, defendant argues that the motion should be denied in full because it is untimely and comes after the entry of final judgment. In the alternative, defendant maintains that plaintiffs should not be reimbursed at their requested rates for time spent facilitating the payment of the November 3, 2020 judgment. Neither party requested oral argument, and the court finds it unnecessary. This motion is now fully briefed and ripe for adjudication.

## II.  STANDARDS FOR DECISION

The URA waives federal sovereign immunity with respect to litigation expenses in takings cases. 42 U.S.C. § 4654(c). It mandates that when awarding a plaintiff compensation for a taking by a federal agency, the court shall "reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." Id. Only prevailing parties may recover under the URA. Otay Mesa Prop., L.P. v. United States, 124 Fed. Cl. 141, 146 (2015), appeal dismissed, No. 16-1438 (Fed. Cir. Mar. 21, 2016).

Plaintiffs bear the burden of documenting their entitlement to a fee award. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). This burden is generally satisfied through the submission of invoices and billing records. Haggart v. United States, 149 Fed. Cl. 651, 658-59 (2020) (citing Rumsey v. Dep't of Justice, 866 F.3d 1375, 1379 (Fed. Cir. 2017)), modified on reconsideration of other issues by 151 Fed. Cl. 58 (2020). Trial courts ultimately exercise "considerable discretion" when evaluating the requested hours, rates, and costs. Stimson Lumber Co. v. United States, 154 Fed. Cl. 694, 701 (2021) (quoting Bywaters v. United States, 670 F.3d 1221, 1228 (Fed. Cir. 2012)), appeal docketed, No. 22-1201 (Fed. Cir. Nov. 30, 2021). This discretion is supported by the trial court's "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley, 461 U.S. at 437.

In the United States Court of Federal Claims ("Court of Federal Claims"), motions for attorneys' fees and costs are governed by RCFC 54(d)(2)(B), which states: "Unless a statute or a court order provides otherwise, the motion must . . . be filed within 30 days after the date of final judgment." A final judgment is one that is "final and not appealable."[2] 28 U.S.C.

---

[2] This definition also governs motions for attorneys' fees under the Equal Access to Justice Act ("EAJA"), regardless of where filed. Brass v. United States, 129 Fed. Cl. 160, 162 n.1 (2016).

§ 2412(d)(2)(G). No procedural rule in the Court of Federal Claims explicitly addresses the timeliness of supplemental motions for attorneys' fees and costs.

### III. DISCUSSION

#### A. Plaintiffs' Supplemental Fees Motion Is Timely

The court first considers the timeliness of plaintiffs' supplemental fees motion. Defendant maintains that any motion for URA litigation expenses, whether an initial motion or a supplemental motion, should have been filed within thirty days after the court's November 3, 2020 judgment became unappealable. Def.'s Resp. 5 & n.2. Although the judgment became final on January 4, 2021, the court set a deadline of January 28, 2021, for plaintiffs' URA motion. Accordingly, defendant does not contend that plaintiffs' initial fees motion, filed on January 28, 2021, was untimely. Id. However, defendant asserts that plaintiffs' supplemental fees motion should be denied because plaintiffs filed it nearly a year after the court's January 28, 2021 deadline had passed. Id. Defendant also emphasizes that a "supplemental request for URA reimbursement could have been lodged at any time before the Court issued its [initial URA] ruling; it was not." Id. at 1; see also id. at 5 ("Plaintiffs had six [] months after attorneys' fees briefing concluded during which they could have supplemented their original motion. They did not do so."). Moreover, defendant claims that to receive additional attorneys' fees after the entry of judgment, plaintiffs should have filed either a motion to alter or amend the judgment under RCFC 59(e) or a motion for relief from judgment under RCFC 60(b).[3] Id. at 6. In reply, plaintiffs assert that RCFC 54(d) does not restrict "final judgments" to those on the merits, suggesting that the court should also consider the December 17, 2021 judgment as a final judgment. Pls.' Reply 2. Plaintiffs also maintain that the thirty-day deadline established by RCFC 54(d) applies only to initial attorneys' fee applications. Id. at 2-3.

Both precedent and the practical realities of attorneys' fees litigation lead this court to side with plaintiffs. The court explicitly entered its November 3, 2020 judgment pursuant to RCFC 54(b), the only avenue by which the court may enter final judgment for fewer than all the claims involved in a case. Thus, this judgment served as a final judgment for the successful claims and triggered the RCFC 54(d) deadline for those claims. The RCFC 54(d) deadline, however, applies only to an initial fees motion; it does not restrict supplemental fees motions like the one at issue here. Brass, 129 Fed. Cl. at 163.

The Federal Circuit has concluded, in the context of the EAJA, that "Congress envisioned only one strict requirement . . . , namely that the court and the Government be put on notice that the claimant seeks fees." Wagner v. Shinseki, 773 F.3d 1343, 1348 (Fed. Cir. 2013) (quoting

---

[3] Elsewhere, defendant suggests that it would have opposed a motion to modify or set aside the judgment, had plaintiff filed one. Defendant's counsel stated, in correspondence with plaintiffs' counsel, that RCFC 59(e) and RCFC 60(b) "have specific timeframes and standards about when a previously-entered judgment can be reopened and modified. We are at this time unaware of a viable basis for such a request." Def.'s Ex. A at 5.

United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 209 (3d Cir. 2000)). If this requirement is satisfied, the timeliness of a supplemental fees motion is governed only by "the tribunal's procedural rules as well as equitable considerations." Id. Other federal circuit courts have reached the same conclusion; the United States Court of Appeals for the Third Circuit, for instance, determined: "In the absence of a timeliness requirement imposed by statutory command, a Federal Rule of Civil Procedure, or an applicable local court rule, 'the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion.'" Eleven Vehicles, 200 F.3d at 210 (quoting Hicks v. S. Md. Health Sys. Agency, 805 F.2d 1165, 1166-67 (4th Cir. 1986)). As in Wagner, no statutory or procedural rule in this case explicitly imposes a deadline for supplemental fees motions. Thus, pursuant to Wagner, the court must exercise its discretion and evaluate the timeliness of plaintiffs' supplemental fees motion based on the equitable factors present here. See Brass, 129 Fed. Cl. at 163 (applying Wagner because "like [the EAJA], RCFC 54(d) does not specify a time limitation for filing a supplemental motion for attorneys' fees and costs").

For two reasons, the equitable considerations in this case weigh in plaintiffs' favor. First, plaintiffs apprised defendant early on of their intention to file a supplemental fees motion. Plaintiffs' initial fees motion explicitly alerted both defendant and the court that plaintiffs planned to supplement their request and the general timeframe that this request would cover. Pls.' Initial Fees Mot. 7 n.13. In their reply filed in support of that motion, plaintiffs reiterated this intention: "[T]here is ultimately going to be supplemental briefing on fees after October 1, 2020 in any event, which will include all of the work performed after October 1, 2020 on the 11 parcels at issue and also all the time associated with Plaintiffs' motion for statutory fees and costs." Pls.' Initial Fees Reply 6-7. At no point over the past year did defendant object to this plan or attempt to demonstrate how it would be prejudiced by it.

Second, plaintiffs did not unreasonably delay filing their supplemental fees motion. Although defendant emphasizes that plaintiffs filed their supplemental fees motion nearly a year after their initial fees motion, Def.'s Resp. 5, intervening motions and other considerations extended the usual timeline. Briefing on the initial fees motion did not conclude until June 17, 2021, due to defendant's attempt to strike certain material from plaintiffs' briefing and defendant's filing of a surreply in opposition to the motion. Resolution of the claims related to the MP-65.80 parcels caused an even more significant delay. The court was required to determine plaintiffs' degree of success to properly evaluate their request for URA litigation expenses. Thus, only after the court had adjudicated the parties' cross-motions for summary judgment and plaintiffs' motion for reconsideration, definitively foreclosing the government's liability for a taking of the MP-65.80 parcels, could the court rule on the initial fees motion.

This timeline gives important context to plaintiffs' delay. Not until October 18, 2021, the day the court denied plaintiffs' motion for reconsideration, did the court conclusively determine that plaintiffs could not request URA litigation expenses related to the MP-65.80 parcels. And not until December 17, 2021, when the court partially granted their initial fees motion, did plaintiffs have "a definitive date through which they intended to request supplemental, reasonable fees based on supporting the initial URA motion." Pls.' Reply 4. Plaintiffs filed their supplemental fees motion sixty-five days after the court denied reconsideration, and only five

days after the court's initial URA award. The court considers this delay reasonable, consistent with other courts' evaluation of the timeliness of supplemental fees motions. See, e.g., Brass, 129 Fed. Cl. at 163 (finding a supplemental motion filed approximately five weeks after the initial fees award timely); Eleven Vehicles, 200 F.3d at 210 (upholding a district court's decision to award supplemental fees when the supplemental motion was filed three months after the initial fees award); Baker v. Colvin, No. 1:11CV1096, 2013 WL 1284108, at *1-3 (N.D. Ohio Mar. 25, 2013) (finding a supplemental motion filed twenty-eight days after the initial fees award timely); see also Vet. App. R. 39(b) (allowing plaintiffs to file a supplemental fees motion within twenty days after the court adjudicates the initial motion).

Not only does defendant's position fail to take relevant precedent into account, but it is unworkable in practice. Defendant maintains that "[p]laintiffs' motion cannot be entertained [because] it comes after the entry of judgment." Def.'s Resp. 6. Whether defendant is referencing the November 3, 2020 judgment or the December 17, 2021 judgment, the fact that judgment would precede a fees motion is unsurprising: "When fee litigation is authorized, it usually occurs after judgment." Doucette v. Comm'r of Soc. Sec., 13 F.4th 484, 490 (6th Cir. 2021). Defendant's position presents an additional contradiction.[4] Hypothetically, suppose a plaintiff files an initial fees motion before the RCFC 54(d) deadline, but the court does not schedule oral argument on the motion until after the deadline. Defendant's interpretation of RCFC 54(d) would suggest that this plaintiff could be reimbursed for time spent preparing the motion, but not time spent arguing in support of it. Of course, defendant might counter that in the present case, plaintiffs "had six [] months after attorneys' fees briefing concluded during which they could have supplemented their original motion." See Def.'s Resp. 5. If it advanced such an argument, defendant would be taking the position that the court could have allowed plaintiffs to supplement their initial motion but should not allow them to file the same material in the form of a separate supplemental motion. This approach is not practical, and it is not supported by the language of RCFC 54(d) or the decisions that have interpreted it.

Furthermore, contrary to defendant's suggestion, a motion to alter or amend the judgment under RCFC 59(e) or a motion for relief from judgment under RCFC 60(b) would not have been an appropriate substitute for a supplemental fees motion.[5] "A motion for attorneys' fees . . . does not imply a change in the judgment, but merely seeks what is due because of the judgment." White v. N.H. Dep't of Emp. Sec., 455 U.S. 445, 452 (1982) (quoting Knighton v. Watkins, 616 F.2d 795, 797 (5th Cir. 1980)). More specifically, a supplemental fees motion is not governed by RCFC 59(e) when it seeks litigation expenses "incurred during a period of time different from and subsequent to" that covered by the initial fees motion "because the supplemental request

---

[4] The court takes the following hypothetical, with minor alterations, from Doucette, 13 F.4th at 490.

[5] Although the following decisions discuss Federal Rules of Civil Procedure 59(e) and 60(b) rather than RCFC 59(e) and 60(b), the analysis remains applicable. "In general, the rules of [the Court of Federal Claims] are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court." Champagne v. United States, 35 Fed. Cl. 198, 205 n.5 (1996).

does not seek to alter or amend the initial award." Eleven Vehicles, 200 F.3d at 209; see also Brown v. Local 58, IBEW, 76 F.3d 762, 769 (6th Cir. 1996) ("[T]he fact that this application was supplemental to another fee application does not transform the request into a Rule 59(e) motion."). RCFC 60(b) is inapplicable for similar reasons. Baker, 2013 WL 1284108, at *1-3. Plaintiffs correctly chose not to invoke either of these rules in their pursuit of additional fees.

The approximately eleven months that elapsed between plaintiffs' initial and supplemental fees motions would have been unreasonable in many scenarios. But given the complexity of the parties' litigation over those eleven months, paired with the fact that plaintiffs filed the supplemental fees motion within days of the court's initial URA award, plaintiffs' delay is reasonable.

### B. Plaintiffs Are Entitled to Reasonable Attorneys' Fees for the Preparation of Their Fees Motion

Having determined that plaintiffs' supplemental motion is timely, the court evaluates the reasonableness of the requested fees. Defendant discusses the substance of plaintiffs' fee request only briefly, but does object to the amount of time plaintiffs' counsel billed to coordinate payment of the merits judgment.[6] Def.'s Resp. 9 n.4. Thus, defendant urges the court to reimburse plaintiffs only for hours spent briefing the initial motion for attorneys' fees. Id. Plaintiffs do not address defendant's objection.

In addition to hours spent on the merits of the case, "courts will typically award some fees for work necessary to prepare a fee petition." Biery v. United States, Nos. 07-693L et al., 2014 WL 12540517, at *4 (Fed. Cl. Jan. 24, 2014); accord McCarty v. United States, 142 Fed. Cl. 616, 625 (2019). When evaluating "fees on fees," however, courts are wary of awarding fees that are "disproportionate to the result achieved." Campbell v. United States, 138 Fed. Cl. 65, 73 (2018). In Campbell, for instance, the court disallowed 400 hours of the approximately 640 hours requested for time spent litigating fees, noting that those requested hours comprised 28% of the total fee request. Id. In Biery, the court emphasized that "there is no basis for finding that the hours claimed for fees should exceed the hours spent on establishing liability" and thus reimbursed plaintiffs for 80 of the 700 hours requested for work on fees. 2014 WL 12540517, at *4. And in Whispell Foreign Cars, Inc. v. United States, the court noted with alarm that "nearly twenty-five percent of the work for which plaintiffs [sought] reimbursement was work done on the fee petition"; the court significantly reduced the requested amount and awarded plaintiffs 125 hours for the fees litigation. 139 Fed. Cl. 386, 396 (2018).

Courts are also reluctant to reimburse plaintiffs for the administrative work associated with dispersing a judgment. As the court discussed in its initial fees decision, administrative

---

[6] Defendant also renews its objection to the hourly rates requested for plaintiffs' attorneys. Def.'s Resp. 9 n.4. The court thoroughly documented its reasons for awarding plaintiffs' requested rates in its initial fees decision, Hardy v. United States, 157 Fed. Cl. 464, 471-73 (2021), and it will not revisit that determination here.

costs should generally be included in an attorney's hourly rate and not compensated separately. Hardy, 157 Fed. Cl. at 475 (citing Otay Mesa Prop., L.P. v. United States, 124 Fed. Cl. 141, 148 (2015)). The processing of payments is generally considered an administrative task that falls into this category, although courts differ as to whether such work should be compensated at paralegal rates or not compensated at all. See, e.g., Hines v. Sec'y of HHS, No. 18-1331V, 2020 WL 7706967, at *6 (Fed. Cl. Spec. Mstrs. Nov. 30, 2020) (reimbursing time spent "coordinating payments" at paralegal rates); Hubbell v. Sec'y of HHS, No. 17-272V, 2019 WL 978815, at *3 (Fed. Cl. Spec. Mstr. Jan. 17, 2019) (classifying "making payments" as administrative work and denying reimbursement). When it comes to coordinating the payment of judgments in particular, the task of collecting the information from plaintiffs necessary to process the payments, "while no doubt tedious and time consuming, is a clerical one." Almanza v. United States, 137 Fed. Cl. 611, 620 (2018).

The court agrees with defendant that plaintiffs' requested hours warrant a reduction. In addition to time spent litigating the initial fees motion, plaintiffs' attorneys and paralegals billed considerable time collecting successful claimants' social security numbers ("SSNs") and otherwise facilitating payment of the settlement. E.g., Pls.' Supp'l Fees Mot. Ex. A at 1 (time billed by Ms. McCulley to "[w]ork on obtaining remaining SSN's"), 2 (time billed by Mr. Stewart to "[c]onference with EGM and GEH concerning remaining SSN's and review EGM's emails to remaining Plaintiffs concerning same"), 2 (time billed by Mr. Houske to "[c]ontinue to prepare detailed analysis of claimants missing SSN information for attorney review; research and investigate additional follow up information for claimants for same and send to EGM for follow up"). Plaintiffs have not explained why the court should treat these billing entries differently from payment processing and other administrative tasks.

In its initial fees decision, the court noted that technically administrative tasks like maintaining claims spreadsheets could be compensated at paralegal rates. Hardy, 157 Fed. Cl. at 475 (citing McCarty, 142 Fed. Cl. at 627; Grantwood Vill. v. United States, 55 Fed. Cl. 481, 485 (2003)). Coordinating payment of the judgment, in contrast, cannot be considered part of the legal work necessary to obtain a favorable result on the merits. Thus, consistent with how the Almanza court and others have approached similar tasks, the court will not reimburse plaintiffs for the time spent processing these payments. Consequently, having reviewed plaintiffs' billing records, the court will reduce plaintiffs' total fees request by 15%, a deduction of $12,489.23. The court makes no further reductions, finding plaintiffs' request for fees related to the fee litigation to be reasonable.

### IV.  CONCLUSION

As set forth above, plaintiffs' supplemental fees motion is **GRANTED IN PART** and **DENIED IN PART**. The court awards plaintiffs $70,772.27 in additional attorneys' fees. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

                                            <u>s/ Margaret M. Sweeney</u>
                                            MARGARET M. SWEENEY
                                            Senior Judge